R. J. & J. McCAMY, for plaintiff in error.

A. W. FITE, solicitor-general, by A. S. JOHNSON, *contra.*

---

NIGHTENGALE *et al.* v. THE STATE.

1. An indictment for stealing a cow sufficiently designates the species to which the animal belongs, though in lieu of the word cow it uses this phraseology: "an animal of the female sex and of that species of animals known as cattle."
2. If on a trial for larceny the jury have no reasonable doubt as to the identity of the animal alleged to have been stolen or as to any other essential fact involved in the commission of the offence, it will be no cause for acquittal that they entertain a reasonable doubt as to the truth or accuracy of some of the descriptive terms applied in the indictment to the animal.   Although a needlessly minute or comprehensive description must be proved as alleged, the superfluous elements need not be established with the same degree of certainty as is requisite touching the essentials of the case.
3. Where one kills a cow not intending to steal it, he is not guilty of cattle stealing, although immediately afterwards the *animus furandi* enters his mind and he thereupon steals and appropriates the carcass.
4. Though open to verbal criticism, the charge of the court touching the evidence of an accomplice was substantially correct.
5. The charge of the court on the subject of confessions was erroneous as applied to the facts of the case.        *Judgment reversed.*

March 5, 1894.   Argued at the last term.

Indictment for simple larceny.   Before Judge SWEAT. Camden superior court.   November term, 1893.

The indictment alleged that the defendants, on September 6, 1892, in Camden county, " one animal of the female sex and of that species of animals known as cattle, red in color, marked crop in each ear and branded with the letter ' P,' of the personal goods of D. R. Proc-

tor, and of the value of $12.00, unlawfully, wrongfully and fraudulently, did take and carry away with intent to steal the same." Defendants demurred on the grounds, that the indictment alleges no offence, and that the description of the property alleged to have been stolen is insufficient. The demurrer was overruled.

D. R. Proctor, the prosecutor, testified: On or about the date named in the indictment, I owned a red cow bearing the ear-marks therein described, which ranged about the premises of Israel Littlefield. She was worth $15. About that time she disappeared, and I have not seen her since. A short time thereafter notice came to me that a cow had been butchered upon Littlefield's premises, and about sixty yards from his residence. I saw signs of a cow having been butchered. This was in Camden county. I own about 250 head of cattle, among them a number of red cows. I remember distinctly having seen one of my red cows around Littlefield's premises; that is the cow which disappeared. From time to time numbers of my cattle disappear; I cannot say by what means; some may be snake-bitten, some perish by the inclemency of the weather. My brand is the letter "P." I cannot say that this particular cow was branded. All of my cattle are not branded; some of them are and some are not; those not branded usually use in a different neighborhood than that where this one was killed. Soon after the disappearance of this cow I had the defendants arrested and charged them with larceny of this animal. They were bound over to answer the charge, and some time thereafter they came to me and asked me to let the matter be settled. I declined to do this, and told them I believed they stole my cow. They made no reply to this statement, but simply said it was hard that it could not be settled. All they said to me was said freely and voluntarily, and without the slightest hope of reward or remotest fear of injury from me to

induce this statement.—Israel Littlefield testified: In September, 1892, one of Proctor's cows, a red cow bearing the ear-marks with which he marked his cattle, ranged upon my place and got to breaking into my crop. One day she broke in and I could not run her out of the field. I was feeble and had no one except my little granddaughter, whom I sent after defendant Nightengale to come up and run the cow out. He soon came, bringing his gun, and he shot the cow in the field and killed her. I did not know he was going to kill her when he came. Did not tell him to do so. He went off, and in about an hour returned with defendant Miller, and they skinned the animal, gave me some of the meat and took the balance off themselves. I gave no information of the circumstances until Abe Moody came and told me he had heard about beef being in the neighborhood and thought that I was connected with the killing of the cow, and that I had better tell about it. I then told him what I have told here. I am a very old negro, about 100 years old. I do not know whether this cow had any brand on it; did not look to see.—The defendants each made statements that they had nothing to do with the killing of the cow, and knew nothing about it until several days afterwards when they were arrested.

After verdict of guilty, defendants moved for a new trial on the following among other grounds:

Refusal to charge: " In order to convict the defendants in this case, it is necessary to prove to a moral and reasonable certainty, and beyond a reasonable doubt, each and every one of the material allegations as they are laid in the indictment, including all of the descriptive averments of the animal alleged to have been stolen; and if the evidence should fail to prove to a moral and reasonable certainty and beyond a reasonable doubt that the animal was branded with the letter 'P,' as alleged in the indictment, both of the defendants should be dis-

charged and acquitted, although all of the other material averments should be so proved."

Refusal to charge: "If it shall appear from the evidence that Nightengale shot the cow and afterwards went off and got Miller to assist in skinning the cow, then Miller could not be convicted under this indictment, unless it shall appear that he was with the other defendant prior to the killing of the cow, engaged in the execution of a common criminal design to take and carry away the cow with intent to steal the same. If he had no connection with the criminal design of Nightengale until after the cow was killed and appropriated by Nightengale, then under this indictment he could not be convicted, and the jury must acquit him."

The court charged, touching the testimony of Littlefield: "If you shall find that these defendants are guilty of the offence charged against them, simple larceny, as alleged, and that this witness was a participant with these defendants and engaged with them in the commission of the crime, then he would be an accomplice; and in that event, while you would still be authorized to consider his evidence, provided that you find that he was an accomplice, and weigh it as the evidence of an accomplice, yet if such evidence was unsupported by other corroborating circumstances connecting these defendants with the commission of the crime, sufficient to satisfy you of their guilt, you would not be authorized to convict them."

The court charged the jury upon the law of admissions and confessions of guilt; which is assigned as error, because there was nothing in the evidence to justify a charge upon such subject.

SPENCER R. ATKINSON, for plaintiffs in error.
W. G. BRANTLEY, solicitor-general, *contra*.