## JOHNSON v. THE STATE.

119  257
121  158

1. Although a disclosure by a person accused of larceny, as to the place of concealment of articles alleged to have been stolen, may have been obtained through the influence of fear, no unlawful violence having been used to obtain such disclosure, the fact so discovered by reason of such information may be proved.  Penal Code, § 1008 ; *Jones* v. *State*, 75 *Ga.* 825 ; *Daniels* v. *State*, 78 *Ga.* 99 ; *Rusher* v. *State*, 94 *Ga.* 363.

2. An indictment charging a person with stealing "one hundred and twenty dollars in paper money, to wit, two twenty-dollar bills, five ten-dollar bills, and six five-dollar bills," is not subject to demurrer on the ground that it does not disclose what kind of money was stolen, this court having held, in *Allen* v. *State*, 86 *Ga.* 399, that such a description of money means bank bills ; but a motion for a new trial by a defendant convicted under such an indictment without proof that the money stolen was bank-bills should have been granted.  *Rouse* v. *State*, 4 *Ga.* 136, 139–140 ; *Watson* v. *State*, 64 *Ga.* 6

Submitted November 16, — Decided December 14, 1903.

Indictment for simple larceny.  Before Judge Lewis.  Laurens superior court.  September 21, 1903.

*S. W. Sturgis* and *J. A. Thomas*, for plaintiff in error.
*Joseph E. Pottle, solicitor-general*, contra.

TURNER, J.  Johnson was tried under an indictment charging him with the offense of simple larceny, the part thereof descriptive of the offense being as follows:  "For that the said Elijah Johnson, on the 30th day of April, in the year of our Lord one thousand nine hundred and three, in the county aforesaid, with force and arms, one hundred and twenty dollars in paper money, to wit, two twenty-dollar bills, five ten-dollar bills and six five-dollar bills, of the personal goods of one Mark Baker, and of the value of one hundred and twenty dollars, unlawfully, wrongfully, and fraudu-

lently did take and carry away, with intent to steal the same, contrary to the laws of said State," etc.    To this indictment Johnson filed a demurrer, based on the general ground that the facts alleged were not such as would "sustain a conviction of simple larceny," and also upon the special grounds, (1) that the indictment did not embrace a "sufficient description of the property to put this defendant on notice of what property was alleged to have been stolen, and (2) that the indictment was defective in that it did not "show whether the property alleged to have been stolen was bank bills, treasury notes, or what kind of money was stolen." The trial judge held that the indictment was not open to these criticisms made upon it, and to this ruling the defendant filed exceptions pendente lite.    As matter of defense, Johnson also filed a special plea of former jeopardy, alleging, in substance, that he had been arraigned on the 16th day of June, 1903, in the city court of Dublin, upon an accusation charging him with the same offense for which he was on trial in the superior court.    This plea had the material averments as to the jurisdiction of the city court, alleged that the offense in that court was charged as a misdemeanor, and appended a copy of the accusation on which he was arraigned in that court. The plea further recited that the city court, upon an investigation of the case, passed an order reciting that, it appearing "from the evidence that sufficient reason existed that the defendant was not guilty of a misdemeanor, but was guilty of a felony, it was therefore ordered by the court that said case be withdrawn from the jury," and that the defendant be committed to the common jail of said county to answer a charge of felony before the superior court.    The city court having, no doubt, acted within the terms of the statute creating that court, his honor of the superior court overruled this plea in abatement.    The case then proceeded to a trial on the merits, and resulted in the conviction of Johnson.    He thereupon made a motion for a new trial, based on the general grounds, to which motion he subsequently made an amendment in which he complained that the court erred in overruling his special plea in abatement, and also in admitting testimony of the prosecutor to the effect that the defendant, while under arrest, went to the place where he had concealed the money alleged to have been stolen, the same being in a pocket-book belonging to the prosecutor, and that the defendant dug up this pocket-book and gave it

to him.　The objection urged against the admission of this testimony was that the defendant had been "compelled to produce evidence against himself."

It appears from the brief of evidence, that, soon after the prosecutor discovered the loss of his pocket-book, the defendant was placed under arrest by one Rowland (who, it would seem, was an officer authorized to make arrests), and kept for two or three hours in custody.　Rowland put handcuffs upon the defendant. The former, after the time aboved indicated had elapsed, "got ready to leave;" whereupon Johnson asked the prosecutor if he intended to put him (the defendant) in jail, and the prosecutor replied that he intended keeping the defendant where he was until the money was found.　Up to this time Johnson had denied having the money.　A bystander suggested that Rowland "would need his handcuffs," and the prosecutor then went off and got a rope and "started to tie the defendant, and then he got scared, and, before he would be tied, he went off and dug up the pocket-book and gave it to" the prosecutor.　All that the prosecutor "threatened to do to the defendant was to tie him and keep him there till" the money was found; and no one else threatened him. Johnson "got scared when he found that he was not going to be carried to jail by" Rowland.　One of the persons present, who had assisted in making the arrest, told the defendant that it was the intention of those having him in custody " to keep him there until night," and that the speaker did not know what they might then do to the defendant.　He at once "got scared and went and got" the hidden pocket-book, the prosecutor accompanying him to the place where it had been concealed.　The prosecutor testified that the pocket-book dug up was the one he had lost, "and had eighty dollars in gold and one hundred and twenty dollars in paper money in it;" but upon being questioned as to the character of the paper money he referred to, he replied: "I don't know whether the money was greenbacks, treasury notes, bank-bills or gold or silver certificates; I don't know what kind they were." This was the only evidence touching the kind of money which the pocket-book contained.　The motion for a new trial came on for a hearing, and was overruled; and Johnson then sued out a bill of exceptions to this court, assigning error on the refusal of the trial judge to grant a new trial, as well as upon the overruling of the

demurrer to the indictment above mentioned.    On the argument
before us, the complaint made in the motion for a new trial as to
the disallowance of the defendant's special plea in abatement was
abandoned by his counsel, and need not, therefore, be considered.

The indictment in this case seems to have been framed under
the Penal Code, § 167, which is as follows:    "If any person shall
take and carry away any bond, note, bank-bill, due-bill, or paper
or papers securing the payment of money or other valuable thing,
or any receipt, acquittance, or paper or papers operating as a dis-
charge for the payment of money or other things, belonging to an-
other, with intent to steal the same, he shall be guilty of simple
larceny, and be punished by imprisonment and labor in the peni-
tentiary for not less than one year, nor longer than four years,
when the property is of the value of fifty dollars or more; and
when the property stolen is under the value of fifty dollars, he
shall be guilty of a misdemeanor."    Under this section a felony
can be charged against a defendant by alleging in the indictment
that he committed larceny of "any bond, note, bank-bill, due-bill,
or paper or papers securing the payment of money," etc., of the
value of fifty dollars or more; and the indictment in the present
case charged Johnson with stealing paper money, describing it as
twenty-dollar bills, ten-dollar bills, etc.    It is obvious that it was
necessary, in order to make the offense a felony, to charge in the in-
dictment that one of the kinds of paper described in the statute was
stolen.    This court, in the case of *Allen* v. *State*, 86 *Ga.* 400, held
that the "ordinary meaning of a five-dollar bill is a bank-bill for
the payment of five dollars," and construed the indictment in that
case, which alleged the stealing of "one five-dollar bill of the value
of five dollars," as charging the theft of a bank-bill, in the sense in
which that term is used in the statute just mentioned.    As a neces-
sary result of the construction thus put upon the indictment in
that case, the court further held that "a person indicted and tried
for larceny from the house, on a charge of stealing in a house 'one
five-dollar bill of the value of five dollars,' can not be convicted of
simple larceny," for the reason that, the indictment charging only
a misdemeanor, a conviction of a felony could not lawfully be had
thereunder.    See, in this connection, *King* v. *State*, 54 *Ga.* 184.
The vital point presented for decision in the *Allen* case was
whether the indictment charged the stealing of a bill such as was

referred to in the statute quoted above ; and we think the ruling announced in that case controls the present case.    It also occurs to us .that the decision made was eminently sound.    It may also be stated, in passing, that Johnson, after his conviction by the jury, was sentenced for a felony.    It being obvious that a distinct effort was made to convict this plaintiff in error of a felony, and the averment in. the indictment being specially designed to effectuate that end, it was, under all the settled precedents of this court, necessary to prove the charge as laid.    See *Crenshaw* v. *State*, 64 *Ga.* 449 ; *Berry* v. *State*, 92 *Ga.* 47, and authorities cited.    The State having failed to make .such proof, we think the conviction was unlawful, and that a new trial should have been granted.

All· the other material matters involved in this case are sufficiently dealt with in the headnotes.

*Judgment reversed.    All the Justices concur.*