## 1443.  PAULK *v.* THE STATE.

1. A sheriff is not required to wait to serve subpœnas for non-resident witnesses, issued in behalf of a defendant in a criminal case, until such subpœnas are countersigned by the solicitor-general; as subpœnas for the defendant are not required to be signed by the solicitor-general. And a motion for a continuance on account of the absence of such witnesses should not be overruled merely because they have not been subpœnaed, where the defendant has in due time procured subpœnas requiring their attendance and delivered the subpœnas to an officer charged with the duty of serving them, with full directions as to the whereabouts of the witnesses. Continuances in criminal cases are not governed by the same rule as those in civil cases; and while, under some circumstances, should it be shown upon a motion for continuance that the absent witness has not been subpœnaed, or should it be made to appear that the witness could have been subpœnaed by the defendant or at his expense, the motion should be overruled, still a motion for a continuance in a criminal case is not necessarily to be refused because the witness, on account of whose absence a continuance is asked, has not been subpœnaed. A continuance (or a postponement at least) should be granted where it appears that a witness is absent whose testimony in behalf of the defendant is material, if in addition it is made to appear that the defendant has used all the diligence within his power and all the means at his command to procure the attendance of the absent witness, and that the witness is within the power of the court's subpœna.

2. It is error to refuse to charge the jury that the theft of a dead hog does not constitute "hog stealing."

3. The remaining assignments of error are without merit.

Indictment for larceny, from Appling superior court—Judge Thomas presiding.  September 23, 1908.

Argued November 10, 1908.—Decided February 9, 1909.

*W. W. Bennett,* for plaintiff in error.

*John W. Bennett, solicitor-general,* contra.

RUSSELL, J.  The defendant in the court below was found guilty of the offense of hog stealing, and sentenced to serve three years in the penitentiary.  Error is assigned upon the judgment overruling his motion for new trial.  When this case was previously before us (2 *Ga. App.* 660, 58 S. E. 1108), the judgment of the

court below was reversed because the court refused to charge the jury that if they found that the defendant shot and wounded the hog in question without any intention of stealing it, and then, with a club, beat the hog to death and threw it into the water, without any intention of stealing it and without converting it to his own use, but simply killed it and left it there to rot, he would not be guilty of the offense of simple larceny. In the record now before us the defendant asked for a new trial upon thirty distinct grounds, some of which are again subdivided into subdivisions. Some of the grounds of the motion for new trial are so qualified by the notes of the presiding judge as to be in effect disapproved, quite a number relate to matters not likely to recur upon another trial, and several are without merit. It can serve no useful purpose to discuss any grounds of the motion save those which constrain us to the opinion that the lower court, in refusing to grant a new trial, committed error.

1. Upon the call of the case in the court below, the defendant moved for a continuance because of the absence of certain witnesses, residing in another county, by whom he expected to prove an alibi. He excepted to the overruling of the motion. The motion was in writing, sworn to by himself as required by law; and there was no counter-showing. His showing for a continuance was complete as to all of the requirements prescribed by §962 of the Penal Code, except the statement that the witnesses had been subpœnaed. The movant showed to the court that, twelve days before the day of his showing, he procured subpœnas for these witnesses, and turned them over to the sheriff of the county, who did not serve them, and that he did not know, until the day before the trial, that the subpœnas had not been served. Reasons why the subpœnas were not countersigned by the solicitor-general are presented, in an amendment to the showing, it being made to appear that the solicitor-general was inaccessible and that the clerk had general authority from the solicitor-general to sign his name to subpœnas in all cases. This, however, was immaterial to the showing for a continuance. As was held in the case of Ivey v. State, 4 Ga. App. 828 (62 S. E. 565), the law with reference to solicitors-general countersigning subpœnas was never intended to apply to subpœnas issued in behalf of a defendant. The real question is, whether (it being undisputed that the witnesses were within the jurisdiction of the court),

the defendant having used all due diligence to procure the attendance of these witnesses, the case should have been continued, or whether, although the defendant had caused subpœnas for the witnesses to be placed in the hands of the sheriff and informed him of their place of residence, several days before court, the defendant should have been put to trial regardless of the failure of the sheriff to serve the subpœnas. It must be borne in mind that, while § 3522 of the Code of 1882 has been placed in the Penal Code of 1895 as § 962, in our previous codes it was codified in connection with civil cases, and that in the codes previous to that of 1895 provision was made that a broader rule should be applied to criminal cases; for instance, in the Code of 1882, by the terms of § 4647 (which is now § 961 of the Penal Code). Section 3522 of the Code of 1882 (which is § 5129 of the Civil Code of 1895) provides, it is true, that the party applying for continuance must in every instance show that the witness for whose absence a continuance is sought has been subpœnaed; and the learned solicitor-general in the present case argues that the trial judge was right in overruling the showing for the continuance, because it appeared, from the defendant's own showing, that the witnesses whose testimony he sought had not been subpœnaed. In a motion for continuance in a civil cause it must be shown that the witness was subpœnaed; for one reason, because the subpœna in a civil case does not affect a witness who lives in a different county; while in a criminal case the witness must obey his subpœna if he lives anywhere in the State. Section 961 of the Penal Code, which, as we have stated above, has special application to criminal cases alone and no reference whatever to civil cases, gives the judge a right to exercise his discretion and grant a continuance upon the *absence* of a material witness, without any reference to whether such witness has been subpœnaed or not. It goes even further, and *requires* a postponement wherever "the principles of justice" appear to demand a postponement. It would never do to hold, as to a prisoner confined in jail, who might be wholly friendless, penniless, and unknown, that he should be required to serve the subpœnas upon his witnesses, and that if it appeared that they had not been subpœnaed (regardless of his inability to have them served), he would not be heard to ask for a continuance. In numerous cases all that the prisoner can do is to ask for subpœnas, place them in the hands of the sheriff, and in-

form him, as near as he can, where the witnesses can be found. When he has done this, we think in such a case due diligence in attempting to secure the presence of the witnesses has been shown, and it is a sufficient and equivalent substitute for what is required in civil cases,—that is, that the witness shall have been subpœnaed; and the question would then arise as to the materiality of the testimony of the absent witnesses.

In the present case the defendant's uncontradicted motion for a continuance showed that the witnesses whose presence he desired would establish an alibi. From the note of the trial judge certifying the ground of the motion which assigns error upon the court's refusal to continue the case (in which note he disapproves the statement that no counter-showing was made to the defendant's motion, and states that the solicitor-general and the clerk of the court stated in open court that the clerk had no authority to countersign subpœnas for non-resident witnesses for the defendant) it appears that the motion was overruled upon the ground that the defendant had not exercised due diligence, in that he failed to have his subpœnas countersigned by the solicitor-general. For the reasons stated in the *Ivey* case, supra, this was immaterial, and the judge, so far as we can see, did not exercise his discretion as to the real merits of the motion for continuance. In *Reid* v. *State,* 23 *Ga.* 190, where there was a motion for a continuance upon the ground of the absence of a witness by whom the defendant expected to prove an alibi, the Supreme Court held it was error to refuse the continuance, although the defendant had present another witness by whom he could prove the same facts. The witness who was present was impeached upon the trial, by proof of bad character, and the Supreme Court held that the lower court should either have granted the motion or have exacted a promise from the State not to introduce evidence to destroy the credit of the witness that was present. In delivering the opinion of the court, Judge Benning, after adverting to the fact that in the case of defense by an alibi, evidence of one witness will frequently be cumulative of that of another, and that there can not well be too much evidence to make out a satisfactory alibi, says: "A motion for a continuance, put on the ground of the absence of a witness, ought to be granted if his testimony will be material. So says the 36th common-law rule." In *Maddox* v. *State,* 32 *Ga.* 584 (79 Am.

D. 307), Judge Jenkins, after referring to the ruling in *Allen.* v. *State,* 10 *Ga.* 85, in which it was held that defendants are not required to subpœna witnesses before a bill is found against them, says that "had the accused known of a witness by whom he could prove the fact in question, had he failed to subpœna him before bill found, and had he in consequence thereof been unready for trial, his showing would have been good," and proceeds to say, "We commend the zeal and fidelity with which our brethren of the circuit bench resist unnecessary delays in the administration of penal justice, and we know well how often such delays are sought at their hands, but we know that this zeal may become a virtue in excess, and it is our bounden duty, so far as in us lies, to see that even an honest and enlightened zeal in the public service shall not preciptate the trial of a case whilst 'the principles of justice require a postponement.' " See also *Copenhaven* v. *State,* 14 *Ga.* 22, and *Dacy* v. *State,* 17 *Ga.* 439 (1). Under the ruling in the latter case, a continuance might have been avoided if the solicitor-general had waived proving that the offense was committed on the particular day set forth in the indictment, and had fixed the transaction on another day within the statute of limitations. All parties to the case seem to have misapprehended the law as to the necessity of the signature of the solicitor-general, but it is uncontradicted that the defendant did all in his power to secure the attendance of the witnesses, by having the subpœnas issued and placed in the hands of the sheriff, and by informing him exactly where the witnesses lived, and that the defendant had been informed by the witnesses that they would come if subpœnaed, and that he did not know that the sheriff had not performed his duties.

2. We think that the court erred in refusing to charge the jury, upon the defendant's written request, that, "if you should find that the hog was dead at the time it was taken possession of by the defendant (if you should find that the same was in the possession of the defendant at all), then you could not convict the defendant in this case; for you must find that he, with intent to steal the same, did take and carry away the hog described in the indictment, and that the hog was alive." This charge might, perhaps, have been embodied in clearer language, but it is legal and pertinent and adjusted to the issues in the case. The defendant had the right to have the jury told that stealing the meat of a hog

which had been killed by some one else, or killed without the intent to steal, was not "hog stealing." The taking of a hog already dead is larceny, if the taking is with intent to steal; but to constitute the stealing of a hog, the animal must be alive when the thief forms the intent to steal and proceeds to take it into possession. If the defendant found the hog after some one else had shot and killed it, and then for the first time conceived the intention of concealing the meat until a more convenient opportunity for removing it presented itself, and did conceal it in the water for this purpose, he would be guilty of the offense of larceny, yet could not be convicted under the present indictment, because not guilty of that species of larceny denominated "hog stealing." The State's contention being that the defendant formed his intention to steal while the hog was alive, and killed and concealed it for the purpose of effecting the theft, it was all the more important that the defendant's contention that he did not shoot the hog or see it until it was dead should be presented to the jury, with appropriate instructions as to what would be the result if the jury believed that the defendant stole the meat but did not kill the hog, either with or without intent to steal it. If the defendant killed the hog without intent at that time to steal it (for instance, if the killing was accidental), and yet thereafter converted the carcass to his own use, it would not have been a theft of the hog, but would have been a theft of the carcass. In view of the great difference in the penalty where a defendant is on trial for larceny of a hog, and especially where a timely request upon the subject is presented, the jury, in all cases where the evidence authorizes the instruction, should be told they must be satisfied that the hog was taken with the intent to steal, on the part of the defendant, while the hog was alive. Of course, where a hog which is stolen is found to be in the possession of a defendant, a presumption may arise that he killed the hog with the intent to steal it, and that the killing was merely a step in the larceny. Whenever there is any question as to whether the defendant killed the hog, or that he found it after it had been killed, or, even if he killed it, if there is any issue raised by the evidence as to his intent at the time of the killing, the jury should be told that the theft of a hog already dead is not hog stealing.

The ground of the motion assigning error upon the refusal of the court to comply with the first request to charge is not approved

by the trial judge, and, therefore, can not be considered; and the request in which the court is asked to charge that if the defendant shot and killed the hog with no intention of stealing it, he would not be guilty of larceny, seems to be substantially covered in the general charge.

3. The court's direction to the sheriff to summon a new panel of 48 jurors amounted to sustaining the objection of the prisoner's counsel to the first 48 jurors, who were illegally summoned; and the fact that the sheriff selected, from the bystanders present in court, a number who had previously been selected without proper authority did not disqualify any of those finally legally summoned.

All of the assignments of error upon the ground that the court erred in admitting testimony to the effect that several of the witnesses heard shots and saw certain persons near the scene of the alleged crime, as well as those assignments which allege error on the refusal of the court to exclude this testimony at the conclusion of the evidence, depend upon the correctness of the contention that there is a fatal variance between the description of the hog as laid in the indictment and the hog discovered to have been killed and stolen. We are all agreed that the admissibility of this testimony (to which objection was offered, and a motion to exclude which was later overruled) depends upon whether there is a material variance. My colleagues think that there is no material difference between a "barrow hog, color white, and black spotted," and "a black and white spotted hog." For myself, disregarding my personal views, it is my opinion that, under the decisions of the Supreme Court, there is a variance, and that the defendant would be entitled to a new trial upon that ground. If the decisions of the Supreme Court upon the subject had not required such strict conformity between the descriptive averments of hogs and cattle alleged to have been stolen and the proof establishing their identity, I confess I would not attach much importance to the difference between a "hog, color white, and black spotted," and "a black and white spotted hog," though I believe that two hogs filling these two descriptions and placed in the same pen could readily be distinguished from each other. From a judicial standpoint I am controlled by the rulings in *Crenshaw* v. *State*, 64 *Ga.* 449, *Wiley* v. *State*, 74 *Ga.* 840, *Hardy* v. *State*, 112 *Ga.* 18 (37 S. E. 95), *Berry* v. *State*, 92 *Ga.* 48 (17 S. E. 1006), and citations, and *Johnson* v. *State*, 119 *Ga.*

257 (45 S. E. 960). In the *Johnson* case Judge Turner gives as a reason why the charge should be proved as laid the fact that the charge is a felony. However, discussion of any of the grounds of the motion for a new trial other than those mentioned in the first two divisions of the opinion is unimportant at this time, though we have carefully considered all of the exceptions urged. For the reasons stated in the first two divisions of the opinion, the judgment refusing a new trial is                                  *Reversed.*