### 2842.   MOSES *v.* THE STATE.

According to the evidence, the defendant did not kill the hog which he was charged with stealing, and the evidence does not compel the conclusion that he suggested that the hog be killed. So far as appears from the record, the intent to steal, if it existed at all, was formed after the hog had been killed. Consequently the jury should have been instructed that the theft of the carcass of a dead hog was not the felony, hog-stealing, but the misdemeanor, simple larceny.

DECIDED NOVEMBER 29, 1910.

Indictment for hog-stealing; from Early superior court—Judge Worrill. June 17, 1910.

*Hawes & Pottle,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold,* contra.

RUSSELL, J. The defendant was convicted of the offense of hog-stealing. The prosecutor testified that he saw the accused with one of the hogs which he had lost, which corresponded in description with an animal described in the indictment. It appeared to have been recently killed, and had been shot apparently with a rifle. The prosecutor heard shots and went in the direc-

tion of the shots, and found the hog in question shot through the head. He hid in the swamp near by, and after a time the defendant and one of his sons came and took up the hog and went off across the creek towards the defendant's house. The prosecutor went to see the defendant about it, and, finding him absent from home, told his son to tell him to come to see about the hog. Some time subsequently he met the defendant and asked him to pay for his hog, which he refused to do, saying he had not gotten any of prosecutor's hogs. When the prosecutor's attention was first attracted, he heard three or four shots fired in the swamp, and there were four or five men in there. At that time the prosecutor was a quarter of a mile off. There were several dogs running, and the men and the dogs were making a great deal of noise. When the defendant carried the hog off he and his son tied its feet together and put a pole between its legs and walked off with it. The testimony for the defendant was to the effect that two hogs were killed, but that both of them belonged to the defendant; furthermore, the evidence was uncontradicted that it was Cap Moses, and not Dock Moses, the defendant, who shot the hogs to death, and that Dock Moses was not present at the shooting. There was evidence that the defendant had instructed his son and others to kill any of his hogs running at large that they could not catch, and, under this instruction, Cap Moses killed the boar in question. The witness who testified that he told Dock Moses that the hog belonged to the prosecutor, Mr. Moore, did not make this statement to Dock until after the hog had been killed. The indictment charged the stealing of three hogs; one a black sow with white feet, and the other two black boar hogs with white feet. The only hog which the defendant was seen to carry away, corresponding with the description of the indictment, was one of the latter. The defendant excepts to the overruling of his motion for new trial, upon the general grounds, and especially because the jury were not told that the theft of a dead hog, where no intent to steal it had been formed while the hog was in life, would not constitute the offense of hog-stealing. It is plain, from the evidence, that the jury should have been instructed upon this specific point. There is evidence that more than one hog was killed, and there is evidence that the defendant assisted in carrying away the carcass of one of these hogs. There is also evidence to the effect that he

was told, by a third party who was present, not to carry the hog away, because it was the property of Mr. Moore. But there is no evidence that Dock Moses himself killed any of the hogs in question, and even when he directed his son and others to kill certain hogs that were in the swamp, this direction was coupled with the instruction that these hogs were his own. Conceding, as we must, that the jury gave the preference to the testimony in behalf of the State, and, therefore, that it is established that Dock Moses carried away Mr. Moore's hog, after having been informed that it was the property of Mr. Moore, the evidence does not show that prior to that time he had any intent to steal Mr. Moore's hogs, but rather an intention to capture, living or dead, some hogs of his own which had escaped from his pasture. Under the evidence submitted, the State failed to prove that Moses formed the intent to steal a hog, or hogs, while they were still alive, and that the direction to kill, and the killing by his son at his instance, were only a necessary step towards reducing the hog to possession. The State did prove that he assisted in carrying away the carcass of one of the hogs which had been killed by his son. And if the testimony in behalf of the State were believed (especially since the carrying away of the hog was not denied), the jury was obliged, under the charge of the court as delivered, to convict the defendant, even though they may have believed that the defendant did not form the intent to steal the hog until after it had been killed, or even until after he had been told that it was not his hog, but Mr. Moore's hog.

The judge charged the jury: "If the evidence in this case satisfies you beyond a reasonable doubt that the defendant, Dock Moses, in Early county, on or about the 15th day of January, 1910, took and carried away the hogs described in the indictment, or any one of those hogs, and you should further believe that they were the property of J. S. Moore and were of some monetary value, and that such taking and carrying away was done wrongfully and fraudulently, with intent to steal the same, then the offense of larceny would be made out and you would be authorized to convict, otherwise not." The judge nowhere in his charge told the jury that the theft of the carcass of a hog already killed would not be hog-stealing if the animus furandi had its inception after the death of the hog, even though the defendant might be guilty

of simple larceny.  The same question which is raised in this case was presented in *Paulk* v. *State,* 5 *Ga. App.* 567 (63 S. E. 659), and is there fully discussed (pp. 577, 578).  See also, to the same effect, *Nightengale* v. *State,* 94 *Ga.* 395 (21 S. E. 221). In the case at bar, if the jury believed all of the evidence in behalf of the State, the defendant would have been liable for the lesser penalty attached to simple larceny, but not subject to punishment for the graver offense of hog-stealing.  If there had been evidence that the defendant had himself killed the hogs, or that he had instructed others to kill them for him, knowing that they were not his own, and no evidence to the contrary, the omission to instruct the jury upon this point might be considered harmless. But in the state of the evidence, we are clear that the judge should have called the attention of the jury to the fact that the larceny of the carcass of a hog already dead did not constitute the offense of hog-stealing, unless they were satisfied beyond a reasonable doubt that the defendant either killed the hog with the intent to steal it, or had it killed with that intent.

*Judgment reversed.*