## CLARKE *v.* THE STATE.

1. The court did not err in allowing a witness, over the objection of defendant's counsel, to testify that sometime previously the defendant had threatened to shoot his wife. This testimony might tend, in the minds of the jury, to weaken the defendant's explanation of his sudden and hasty departure from the county in which the homicide was committed; for in his statement he said that he went to the place at which his wife lived to explain the matter to her.

2. The court did not err in sustaining the objection of State's counsel to the testimony of a witness who was asked as to "whether or not his testimony was substantially the same as that previously given before the coroner." It was shown that the statement made by the witness before the coroner had been reduced to writing, that it had been filed in court, and that the State's solicitor had it there. If the defendant's counsel insisted that the witness's testimony before the coroner had not

Criminal Law, 16 C. J. p. 715, n. 2, 3, 5; p. 717, n. 37; p. 759, n. 84 New; p. 894, n. 46; p. 1002, n. 17, 18; p. 1217, n. 42.

Homicide, 30 C. J. p. 337, n. 86.

Witnesses, 40 Cyc. p. 2765, n. 19; p. 2766, n. 21.

been correctly taken down, he might have asked the witness to restate as well as he could his testimony given before the coroner, and the jury might then say whether or not that testimony "was substantially the same" as that given in court.

3. The court did not err in permitting counsel for the State, in his argument to the jury, to "hold a pistol up that he had in court, and exhibit it to the jury for the purpose of examination, and allow them to hold the same." Although the pistol exhibited had not been introduced in evidence, and it had not been proved that this pistol was the weapon with which the homicide was committed, nevertheless any pistol might be shown to the jury for some legitimate purpose and be made the basis of some argument. If in his argument counsel made an illegal use of the pistol, the particular improper use to which he put it should have been designated in the objections as set forth in the motion for a new trial.

4. The court charged the jury in part as follows: "The State's contention is that the prisoner had been drinking to such an extent that he had been forbidden from the house of his father-in-law." This was not error for the reason assigned, to wit, "that the condition of the defendant three weeks before the homicide could illustrate no fact or circumstance upon the trial of the present case, and was highly prejudicial to the rights of the defendant."

5. The charges excepted to in the 8th, 9th, and 10th grounds of the motion for new trial were not erroneous for any of the reasons assigned.

6. There was no evidence in this case under which the court was authorized to charge the jury upon the subject of confession.

### No. 6188. December 14, 1927.

Murder. Before Judge Meldrim. Chatham superior court. July 5, 1927.

*Robert L. Colding,* for plaintiff in error.

*George M. Napier, attorney-general, Walter C. Hartridge, solicitor-general, T. R. Gress, assistant attorney-general,* and *Julian Hartridge,* contra.

Beck, P. J. Harold Clarke was convicted of the offense of murder, and was sentenced to life imprisonment. He made a motion for a new trial, which was subsequently amended, and upon the hearing was overruled. Clarke upon the trial in his statement admitted that he had killed the deceased, P. E. Rowland, by shooting him with a pistol, but insisted that he had done so in self-defense. The evidence introduced, except as to the fact of the homicide, which was shown by the admission of the defendant, was largely circumstantial. There were no eye-witnesses of the alleged crime. There was evidence tending to show that the deceased was unarmed at the time, and evidence tending to

establish the fact that the defendant had fled; though he subsequently surrendered himself.

1. In the first special ground of the motion for a new trial error is assigned upon a ruling admitting, over the objection of defendant's counsel, the testimony of a witness to the effect that some time previously the defendant had threatened to shoot his wife; the same witness having also testified that at the time of the homicide the defendant and his wife were living on good terms. The court did not err in admitting this evidence. The State had introduced evidence tending to show the flight of the defendant after the commission of the homicide, and in his statement he said that he was not fleeing at a certain time referred to by witnesses for the State, but that he went to Guyton to tell his wife. "I got to Guyton and explained it to my wife; and she said nothing was the matter, that I was only excited." The evidence admitted over objection was properly allowed for the consideration of the jury, and it was for the jury to say whether or not it tended to render improbable the defendant's explanation of the alleged flight.

2-4. The rulings stated in headnotes 2, 3, and 4 require no elaboration.

5. In the 8th ground of the motion for new trial error is assigned upon the following charge of the court: "The State's contention is, that the prisoner, more or less under the influence of liquor, having these words of dispute with the deceased, drew from his pocket that pistol and shot the deceased in the abdomen, and the deceased turned, and then that the prisoner shot the deceased in the back, and the deceased made his way some fifty yards from the road, and fell upon his face in a ditch, where he was found by two boys from Bethesda." In the 9th ground error is assigned upon this excerpt from the charge: "The State's contention is, that the prisoner and his wife were alienated; that some few weeks before he had threatened to kill her; that he had been forbidden from the house where she was living; and that his explanation is not true. On the other hand, the defendant's contention is that it is true. He insists that it was perfectly natural for him to have gone where his friends were, and that afterwards he returned to the city and gave himself up for trial." And in the 10th ground the following charge is excepted to: "The State's conten-

tion is, that that is not true; that what he stated in Guyton a day or so after the alleged homicide was an afterthought, a self-serving declaration, and having fixed up (is the contention of the State) the declaration, then he comes down and submits himself for trial; and when he makes his statement, the contention on the part of the State is that he makes his statement so as to conform to what he had said to Norton at Guyton." These charges were authorized under the evidence, and were not erroneous for any reason stated.

6. The court charged the jury in part as follows: "It is contended on the part of the State that this defendant made a confession. See whether he did or not. No confession, or alleged confession, can be considered by you unless it first appears that a confession was made; that it was freely and voluntarily made; that it was not induced by another, and that it was not influenced by the slightest fear of punishment, or the remotest hope of reward. If you find that a confession was made, measuring up to this requirement of the law, then I charge you that it must be received with great caution, and that a confession alone, uncorroborated by other evidence, would not be sufficient to convict." This charge is excepted to upon the following grounds: "(a) It was not contended nor insisted that the defendant had ever made any confession. (b) While he had made an admission, that admission was in exact accord with the statement made to the jury upon the present trial, and made out a case of self-defense. (c) The action of the court in charging the jury the law of confessions was highly prejudicial to the rights of this defendant, and was wholly unwarranted by any of the evidence in this case." In substance, the exceptions to the charge are based upon the contention that there was no evidence authorizing the charge upon the subject of confession. The majority of the court is of the opinion that this contention is sound. The witness Norton, introduced by the State, testified in part as follows: "He [the defendant] said Rowland gave the five dollars to Mr. Hamm, and he said that Rowland asked him for some money to get some whisky with, and he gave him a dollar bill, and Rowland came back and they then went on towards Cedar Hammock to Thunderbolt, to Burnside, and going to Cedar Hammock, that at a place on Ferguson Avenue Rowland demanded pay again, and he said, 'I

have already paid you,'. and Rowland said, 'You have not.' He said, 'We will go back to Mr. Hamm and see about it,' and on the way back they stopped, and Rowland went to get out to go across the road into the woods, and Rowland said, 'If I can not get my pay one way,' with an oath, 'I will get it another,' and threw his hand on his hip, like I have mine here, and when he did he had his gun inside his coat. That is to say Harold had his gun, that he had it inside his coat, and Rowland pulled his gun that way, and as he did he drew his and shot at him and Rowland threw up one hand, this hand, I understood it to be his right hand. He said he threw up a hand, and he shot again and ran to the automobile, and the first thought that struck him was to go to Guyton to his wife and children." Counsel for the defendant contend that the testimony quoted is not evidence of a confession; that it is merely an admission that the defendant killed Rowland "under circumstances of self-defense."

The majority is of the opinion, taking the entire statement of the defendant here quoted, that it did not amount to a confession. It was an admission of the homicide, but in connection with that admission circumstances of justification of the shooting, or excuse for the fact, are also stated. In *Powell* v. *State,* 101 *Ga.* 9 (29 S. E. 309, 65 Am. St. R. 277), it was said: "The court charged the jury the law in relation to confessions. The foundation for this charge is to be found alone in a statement testified to by witness Homer Adams, which was to the effect that he saw the prisoner after the killing in the court-house, at Rochelle, and heard him speak in relation to the killing as follows: 'He said that his conscience did not bother him any more about killing Reid than if he had killed a damned dog. He said he was sorry for his wife and on Reid's wife's account.' In opening his charge to the jury, the court instructed them that the defendant admitted the shooting, but insisted that it was done under circumstances of justification. The whole evidence and statement of the prisoner show that the question of whether the defendant did the shooting was not the real issue. The words used by the defendant, according to the statement of the witness, were in no sense a confession of guilt. They constitute a criminating admission that he killed Reid. Further than this, the words tended to deny guilt in the commission of the act, in that his conscience justified the

act. As a criminating admission against him his statement was admissible in evidence; but the court, in charging the jury, overlooked the distinction between confessions of guilt and admissions of mere evidentiary facts not inconsistent with innocence, and accordingly erred in treating the statement as a sufficient basis for giving in charge to the jury the law relating to confessions. *Dumas* v. *State,* 63 *Ga.* 600; *Fletcher* v. *State,* 90 *Ga.* 468 [17 S. E. 100]; *Nightengale* v. *State,* 94 *Ga.* 395 [21 S. E. 221]." And in *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21), this court, speaking through Mr. Justice Evans, said: "'A confession, in criminal law, is a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act and the share and participation he had in it.' Black's Law Dict. This definition of a confession was adopted and approved by the Court of Appeals of Kentucky in Spicer *v.* Commonwealth, 51 S. W. 802. 'A confession is a person's admission or declaration of his agency or participation in a crime, and is restricted to admissions of guilt.' 3 Am. & Eng. Ency. Law, 439. These definitions of a confession imply an admission of every essential element necessary to establish the crime wherewith the defendant is charged. Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it can not be said to be an admission of guilt. There is a difference between an incriminating statement and a confession of guilt. In the former only one or more facts entering into the criminal act is admitted, while in the latter the entire criminal act is confessed." Decisions are also referred to and quoted in the opinion in the *Owens* case, other than those which appear in the excerpt just quoted. The majority of the court in the instant case are of the opinion that it was error for the judge to charge upon the subject of confession, even though he submitted to the jury the question as to whether a confession had been made.

The writer of this opinion respectfully dissents from the conclusion reached by the majority. If, in connection with the statement to the effect that he had shot and killed the deceased, the accused had further stated facts and circumstances that justified

the shooting, or excused it, or which mitigated the offense, then the statement would not have amounted to a confession, and a charge upon that subject would not have been authorized; but whether or not the circumstances narrated in that statement justified, or excused, or mitigated the offense of homicide, was a question for the jury, and it was proper for the court under proper instructions to submit the question as to whether a confession had been made or not, and it was within the jury's province to decide whether or not the circumstances set forth in the statement of the prisoner justified or mitigated the homicide. In a dissenting opinion in the *Owens* case, supra, Mr. Justice Lamar said: "To bring the case within the rule of confessions it would not be necessary for him also to admit the motive, or malice, or to say in so many words that he had committed murder. If so, the law of confessions will rarely, if ever, be applicable on trials for that offense. All confessions are not of the same grade. There may be (1) a plea of guilty, in open court; or (2) an extrajudicial acknowledgment of guilt; or (3) an acknowledgment of the commission of the deed, or main fact, from which the law presumes guilt; or (4) an acknowledgment of the commission of the deed, coupled with an excuse which affords no legal defense; or (5) an acknowledgment of the commission of the deed, from which the law presumes guilt, but coupled with an exculpatory statement setting out facts which amount to a legal excuse." I am of the opinion that in this extract quoted the learned Justice was correct in classing among statements that amount to a confession an acknowledgment of a commission of the deed coupled with an excuse which affords no legal defense. In the evidence quoted above there was an acknowledgment of the commission of the deed, and it was for the jury to say whether or not the excuse coupled with the acknowledgment afforded a legal defense. In *Jones* v. *State,* 130 *Ga.* 274 (60 S. E. 840), it was held: "Statements made by a defendant charged with murder, that he did the killing charged because of certain facts which, if true, furnished no legal excuse or justification therefor, amount to a confession." Conceding that the jury would probably have found that the facts stated by the prisoner in connection with his statement that he committed the homicide afforded a good defense. if they found those facts to be true, nevertheless it was a question for them to decide whether the

facts stated apparently justifying the shooting did in fact justify or mitigate the offense; and the court did not err, in the opinion of the writer, in submitting that question to the jury. I am authorized to say that Mr. Justice Gilbert concurs in this dissent.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Gilbert, J., who dissent.*