### 22531. MUNN *v*. THE STATE.

DECIDED SEPTEMBER 1, 1932.

*R. S. Wimberly,* for plaintiff in error.
*Hollis Fort, solicitor-general,* contra.

HOOPER, J. Plaintiff in error, Sonny Munn, was jointly indicted with James Anderson for hog-stealing, under § 159 of the Penal Code. James Anderson pleaded guilty, and testified in this case as follows: "I am one of the defendants, Sonny Munn being the other defendant, charged in this indictment with hog-stealing. I entered a plea of guilty to stealing the hog. Sonny Munn got the chitlings, spare-ribs, and a piece of backbone. Sonny Munn didn't

help clean the hog at all. He took his part and carried it on, and I carried mine. The hog was dead when it got to Sonny Munn. He did not lend me any assistance. I cleaned the hog myself, and nobody helped me gut him. I told Sonny Munn the hog was stolen. Sonny Munn took out of the box spare-ribs, piece of backbone, and head, and chitlings. I carried my meat home and he did his. It was two and a half miles from that place to where the hog was shot. I don't know exactly how far Sonny Munn lived from where the hog was cleaned, but I reckon it was about two hundred yards from where I dressed the hog to where he carried it. It was a red-and-white-spotted hog, and I guess weighed about a hundred pounds. I don't know whose woods it is where the hog was killed; it's what's called the Woodruff place. I did not tell the defendant, Sonny Munn, that a car run over that hog. The hog was killed by being shot about dusk dark. There was no skin game going on where I was. If there had been, I would have been in it. I told him the hog was shot and that I shot him, and I told him, Sonny Munn, where I shot it. I did not tell Munn whose hog it was, because I didn't know. He asked me how I come by it, and I told him because he asked me. I did not object to him knowing it, because I thought I would get by with it. I thought he wouldn't say anything about it, as he was in it as much as I was. I did not tell him to take it; that was left with him, and he could have did it if he wanted to. I told Munn not to say anything about it, and he said he would not, because he was bad in it. I thought both of us would get by. That hog came from two and a half miles. I cleaned the hog in the woods at Jenkins's field, right near town, not out of town good. I shot it in the woods two miles out. I don't know what time the defendant, Sonny Munn, got there. The hog had not been killed over an hour. It did not smell bad and was not spoiled."

There was no other testimony in the case except that of the prosecutor, H. O. Woodruff, as to the loss of the hog, and that of the deputy sheriff, W. L. Maddox, who testified in substance that "he [defendant] said he got the head, chitlings, and backbone, . . that they had eat the head and some parts, and throwed the chitlings in the well. He told me . . he wanted to get a compromise with Mr. Woodruff," the prosecutor. It appearing from the undisputed evidence that the hog had been killed, cleaned, carried two

and a half miles from the scene of the larceny, and packed in a box before the defendant received any of it or had any knowledge of it, the verdict of guilty was not supported by the evidence, since it appears therefrom that the defendant did not kill the hog or even suggest that it be killed. So far as appears from the evidence, the intent of the defendant to steal the hog, if such intent existed at any time, was formed subsequent to the killing, and, under such circumstances, he could not legally be convicted of the offense charged, since "the theft of the carcass of a dead hog was not the felony, hog-stealing, but the misdemeanor, simple larceny." *Moses* v. *State*, 8 *Ga. App.* 446 (69 S. E. 575) ; *Smith* v. *State*, 11 *Ga. App.* 385 (75 S. E. 447) ; *Nightengale* v. *State*, 94 *Ga.* 395 (3) (21 S. E. 221). If there be any conflict between the present ruling and the decision in *Green* v. *State*, 114 *Ga.* 918, this court is bound to follow the older adjudication in the *Nightengale* case, supra.

It follows that the court erred in refusing to grant a new trial.

In view of the foregoing ruling it is not necessary to pass upon the special grounds of the motion for a new trial.

*Judgment reversed.* *Broyles, C. J., and Luke, J., concur.*