## WRIGHT *v.* THE STATE.

No. 12356.   September 27, 1938.   Rehearing denied October 13, 1938.

*Aaron Kravitch* and *J. G. Lemon,* for plaintiff in error.
*M. J. Yeomans, attorney-general, Samuel A. Cann, solicitor-*

*general, Andrew J. Ryan Jr., Emil J. Clower,* and *Ellis G. Arnall,* contra.

HUTCHESON, Justice. Wilson Wright was indicted and convicted of the offense of murder. His motion for new trial was overruled, and he excepted.

█ The admissions attributed to the defendant, briefly stated, were as follows: On the morning of the killing, Wright, the defendant on trial, met Anderson, his alleged confederate, who invited Wright to go with him, saying they were going to get something. Wright went, and when they reached the store of Center, the deceased, Anderson walked around the front of the store, and Wright stood by the drug-store window next door. They then planned to go into Center's store to rob him. Anderson was to grab Center and hold him, and the defendant was to take and fill up suit-cases with "stuff" out of the store. When Center turned his back Anderson grabbed him. They tussled and fell to the floor. Anderson held Center on the floor while the defendant packed merchandise into two suit-cases, took a box containing pants off the counter, and put this box with the suit-cases. Anderson took Center's keys from him and handed them to Wright. Wright took the keys, unlocked the big door to the safe, and tried to unlock the inner door, but could not; whereupon he hid the keys under some boxes on the counter. Anderson then pulled a pistol from his bosom, and while holding Center on the floor struck him on the head with it. The defendant saw Anderson hit Center one time. Anderson then took Center by the shoulders, and the defendant took his feet and they both dragged him behind the counter. Center was unconscious. Anderson took the box of pants and one of the suit-cases, and the defendant took the other suit-case, and they left the store, carrying their loot to a negro house. Later the defendant pawned one of the suit-cases with its contents for four dollars which he divided with Anderson. The two then separated, but met again about five o'clock Saturday afternoon, when Anderson gave the defendant the pistol with which Center had been struck, to be pawned. Anderson waited on the outside while the defendant went into the pawnshop and pawned the pistol for four dollars. The defendant gave Anderson the four dollars, and Anderson gave him twenty-five cents. According to Wright's statement, while the two were in Center's store Anderson took the

money out of the cash register. Wright's statement was to the effect that his and Anderson's sole purpose was to go into Center's store and rob him.

The substance of these admissions was that the defendant and Anderson entered into a deliberate plan to rob Center; that immediately thereafter they put this plan into execution by entering Center's store, each carrying out his part of the unlawful enterprise, as agreed; that in the progress of the unlawful project a deadly assault was made upon Center by Anderson in the defendant's presence, while, as might have been anticipated, Center was resisting the attempt to rob him; that after Center had been rendered unconscious by this assault, the defendant aided in dragging him behind the counter, where he was left with wounds which proved mortal; that the defendant and Anderson left the store with their loot, a portion of which the defendant later pawned; and that the sole purpose of the defendant and Anderson was to go to Center's store and rob him. Based on the foregoing, the judge did not err in charging the jury on the law of confessions. "A confession is a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged." *Owens* v. *State,* 120 *Ga.* 296 (2) (48 S. E. 21). Under that ruling, the admissions of the defendant amounted to a plenary confession. They were tantamount to a confession of guilt of the offense of murder. While the defendant said that the crime of robbery only was contemplated in the original plan, still it was not necessary, in order for the defendant to be guilty of murder, that this latter offense should have been a part of the original plan. Under the defendant's admission, robbery was the initial purpose of the unlawful enterprise; and the homicide of the person sought to be robbed was a probable consequence of the execution of the original plan, and all participants in the robbery resulting in the homicide were guilty of murder. In *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36), this court held: "Where three persons conspire to rob a merchant in his store, and one of the conspirators remains in an automobile in front of the store, with the engine running, in order that the three may speedily escape from the scene of the robbery, while the other two enter the store, and, in furtherance of the common design to rob, kill the merchant intended to be robbed, such

killing is the probable consequence of the unlawful design to rob, and all the conspirators are guilty of murder, including the one in the automobile. It is not necessary that the crime of murder should be a part of the original design; but it is enough if it be one of the incidental probable consequences of the execution of their design, and should appear at the moment to one of the participants to be expedient for the common purpose. The intent of the actual slayer is imputable to his co-conspirators." Nor does the fact that the deceased was killed, not by being shot with the pistol but by being struck with it in a vital spot, militate against the conclusion that the defendant's statements amounted to a confession. The defendant said that while he and his confederate were engaged according to prearrangement in the execution of the unlawful project, his confederate, in his presence, struck the deceased with the pistol on his head with such violence as to render him unconscious (subsequent examination showing a fracture of the skull); and that the defendant, to cover up the crime, then helped to drag the helpless victim to a place of concealment where he was found dead. It follows that admissions of the defendant detailing an assault of this nature made by his confederate, without mitigation or excuse, which resulted in death, he being present, aiding and abetting, amounted to a confession under the law; and the judge did not err in charging on the law of confessions.

The *Powers* decision, 172 *Ga.* 1 (157 S. E. 195), is not authority for the proposition that a confession was not made in the instant case. In the *Powers* case the defendant's statements amounted only to incriminatory admissions as to a series of circumstances from which an inference of her guilt might be deduced, to wit: (1) The defendant put in the paper an advertisement for a chauffeur for an old lady, etc. (2) Manchester, the principal, applied for the position, and she gave him a room. (3) The boy Parks (the deceased) was there, and she had an insurance policy on his life for about $3000. (4) She told Manchester, the principal defendant, about it, and Manchester said he was broke and would knock him off for a thousand dollars. (5) "She did not say whether or not she promised Manchester a thousand dollars if he did that night." (6) She said Manchester went out with Parks about 9:30, and Manchester returned about 11:30 and said,

"I got him," and handed her the pistol, and she put it away. (7) Manchester said he took Parks down to the river and shot him; that they went down there proposing to hold up a whisky car. These admissions taken together constituted only incriminatory statements on the defendant's part. There was no plenary admission of guilt in any of them. The defendant, while admitting ownership of the pistol used in the homicide, nowhere admitted having furnished it to Manchester, the principal, for use in the killing, and, while admitting having heard Manchester say that he would knock the deceased off for one thousand dollars, nowhere admitted having offered or promised him a thousand dollars to commit the crime. In a word, Powers nowhere in her incriminating statements made an admission embracing every element necessary to establish the crime wherewith she was charged. An admission of this nature is essential to a confession of guilt under the law of this State. Unless the admissions of the defendant are broad enough to comprehend every element necessary to make out the case against him, it can not be said to be a confession. In an incriminating statement not amounting to a confession, only one or more facts entering into the criminal act are admitted; while in a confession the entire criminal act is admitted. "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not." *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100). "The distinction in all of our cases is clearly drawn between the effect of admissions of fact from which the guilt of the accused may be inferred, and the admission of guilt itself. Incriminating statements, to be the equivalent of a confession of guilt, must be so comprehensive as to include every act necessary to be proved by the prosecution in order to establish the defendant's guilt. An admission of the main fact, from which the essential elements of the criminal act may be inferred, amounts to an admission of the crime itself." *Owens* v. *State,* supra. Measured by the rule laid down in the *Fletcher* case, supra, and the *Owens* case, supra, there was no confession in the *Powers* case, but only incriminatory admissions. Nor is the *Covington* decision, 79 *Ga.* 687 (7 S. E. 153), authority for the position taken by the defendant here. In that case the defendant admitted holding certain stolen chickens, stating that one Cosby told him to wait

on a vacant lot until he came back; that he did not know what Cosby was going after; that Cosby had a sack, went off, got two chickens and brought them and gave them to the defendant, and then went off again and returned with two more. The defendant's admissions were not the equivalent of a confession. On the contrary, he stated that he did not know what Cosby was going for when he went away and brought back the stolen property. Nor is the *Dumas* decision, 63 *Ga.* 600, 604, authority for the position taken by the defendant here. In that case the defendant admitted his presence at the scene of the crime, but denied complicity in it. Nor does the *Fletcher* case, supra, sustain the position of the defendant in the instant case. The declarations of the defendant Fletcher to the policeman were designed to explain his possession of some of the goods which were in the building immediately before an alleged arson, and his knowledge touching the whereabouts of other goods which, when found, were not in his possession, but, like those which were, constituted a part of the property which could be regarded as fruits of the arson. The declarations of the defendant were made with an exculpatory object, rather than with an inculpatory intention, and could not be construed as a confession.

■ A pistol, such as is here shown, used as a bludgeon upon a man's head with such force as to fracture his skull, render him unconscious and kill him, must of necessity, when so used, be a weapon likely to produce death. Abundant proof of the deadly character of the weapon used is found in the nature of the wounds inflicted, in their immediate effect upon the person assaulted, and in the fact that death resulted from the assault within a few minutes. If this pistol in the manner in which it was used on the occasion in question was a weapon likely to produce death, the law from the use of such weapon in that manner presumes malice and intent to kill. *Flannigan* v. *State,* 135 *Ga.* 221 (4) (69 S. E. 171); *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863). Compare *Dorsey* v. *State,* 126 *Ga.* 633 (55 S. E. 479). The defendant's admissions show that, with him present aiding and abetting, an assault with a deadly weapon resulting in death was made upon the deceased by Anderson his confederate. The blows of Anderson were the blows of Wright, and he, like Anderson, is chargeable with their natural result. The defendant admitted his participa-

tion in an act which in its consequences naturally tended to destroy human life and which did destroy human life. Like his co-conspirator who struck the actual blows, he is estopped from saying there was no intent to kill. Where death ensues in such circumstances, the law implies the intent to kill. A man is presumed to intend the natural consequences of his conduct. A natural consequence of an assault such as described above, taking into consideration the character of the instrument used, the great violence employed in its use, and the vital parts of the deceased's body which received the blows, was the death of the person assailed. See *Thornton* v. *State,* 107 *Ga.* 683 (5) (33 S. E. 673); *Bryant* v. *State,* 157 *Ga.* 195 (121 S. E. 574). Whether or not the weapon used was a deadly weapon, and whether or not the confederate of the defendant actually intended to kill the deceased, under the evidence the defendant and his confederate were engaged in the prosecution of a crime punishable by confinement in the penitentiary, and the killing occurred in the prosecution of such crime; and in view of the Code, § 26-1009, defining involuntary manslaughter and declaring that "where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, *or of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged murder,"* under no theory of the case was the law of involuntary manslaughter involved, and the court did not err in omitting to charge such law to the jury.

■ There was sufficient corroboration of the confession. The evidence supported the verdict, which received the approval of the trial judge. The grounds of the motion show no reason for granting a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*

ATKINSON, P. J., concurs in the result only, in view of the pronouncement in division 2 of the opinion. The facts there stated distinguish the case from *Dorsey* v. *State,* 126 *Ga.* 633 (supra), except for which the ruling in *Dorsey* v. *State* should be followed.