### 18779. FIELDS *v.* THE STATE.

HAWKINS, Justice. The plaintiff in error, Jennings Edward Fields, was indicted in DeKalb Superior Court for the murder on February 6, 1954, of James L. Mize, a peace officer of DeKalb County. The record discloses that, on February 6, 1954, the Police Department of DeKalb County received a long-distance telephone call and also a telegram from the Mecklenburg County Police Department, Charlotte, North Carolina, requesting the arrest of the defendant, and that this telegram, reading as follows: "Arrest one Jennings E. Fields first degree burglary—felony warrant on file Mecklenburg County Police Dept. Charlotte

NC. [Signed] Chief Stanhope Lineberry," was read over radio by the desk sergeant of the DeKalb County Police Department to officers James L. Mize and J. R. Davis shortly before the arrest by them of the defendant on that date. Following the shooting of officer Mize, the escape of the defendant from his automobile, and his later arrest by other police officers, the defendant made a written statement concerning the killing of officer Mize, which was introduced in evidence on the trial, and in which he said: "I was at my house at approximately 5:00 p. m. Saturday, February 6, 1954, when two police officers came there and told me I was wanted by the North Carolina authorities and that I would have to go with them. I went to their car and after getting in I asked them if my wife could follow us to their place, they agreed and one of them returned to my apartment and told my wife that I wanted her to follow us in her car. One of the officers was to drive my Oldsmobile and follow me in the police car, my wife was to follow this one in her Buick. We had just got started good, when I noticed the officer's pistol on his side next to me and while he was driving I grabbed it and he and I began scuffling for it causing him to lose control of the car and run off the road. In the scuffle the gun dropped on the floor of the car and we both grabbed it at the same time and continued scuffling. The gun went off and the officer quit struggling. I don't know how many times the gun went off and I never saw the other officer until I got out of the car to run to mine and noticed him running towards the apartment houses. I ran to my Oldsmobile and saw the keys were not in it, so I ran to my wife's car to get the keys from it, as I knew there was a set on the same ring for my car. I asked my wife to give me the keys and she said 'No, no, Jennings,' so I grabbed them from the switch. At no time do I remember pointing the officer's gun at my wife in order to make her give the keys to me." After detailing the wrecking of his automobile, the defendant further stated that he left his car "and took my pistol, a .32 caliber S. & W. revolver, from glove compartment and the officer's pistol with me," and that, just before his arrest by other officers, "I got out on the road and turned towards one of the cars, throwing both of the guns down so they would come and get me and not shoot me. . . I never had any intention of shooting anyone, when I grabbed the pistol from the officer's holster, I wanted only to escape, as I am afraid of police officers. I had done nothing in North Carolina and do not know why the authorities there wanted me." The defendant was convicted of murder without a recommendation, and to the judgment denying his motion for a new trial as amended he excepts. *Held:*

1. Ground 4 of the amended motion for a new trial excepts to the charge of the court on the law of confessions of guilt, upon the ground that such a charge was not authorized by the evidence. While this court has held many times that it is harmful and prejudicial error to give in charge to the jury in a criminal case the law in reference to confessions of guilt when there is no evidence of a confession of guilt, but only evidence of an admission which might tend to criminate (*Dumas* v. *State,* 63 *Ga.* 600 (5); *Covington* v. *State,* 79 *Ga.* 687, 7 S. E. 153; *Fletcher* v. *State,* 90 *Ga.* 468 (3), 17 S. E. 100; *Suddeth* v. *State,* 112 *Ga.* 407 (1), 37 S. E. 747; *Weaver* v. *State,* 135 *Ga.* 317, 69 S. E. 488;

*Owens* v. *State,* 156 *Ga.* 835 (2), 120 S. E. 413; *King* v. *State,* 163 *Ga.* 313 (11), 136 S. E. 154; *Clarke* v. *State,* 165 *Ga.* 326 (6), 140 S. E. 889; *Powers* v. *State,* 172 *Ga.* 1 (30), 157 S. E. 195; *Pressley* v. *State,* 201 *Ga.* 267 (1, 2), 39 S. E. 2d 478; *Hobbs* v. *State,* 206 *Ga.* 94 (1), 55 S. E. 2d 610; *Harris* v. *State,* 207 *Ga.* 287, 61 S. E. 2d 135; *Green* v. *State,* 210 *Ga.* 745, 82 S. E. 2d 703)—where, as in this case, the defendant, in the written statement which the jury was authorized to find he freely and voluntarily made, and as quoted in part above, admitted that he attempted to and did rob the police officer of his pistol by force and violence, which is itself a capital felony (Code, Ann., §§ 26-2501 and 26-2502), and that, during the progress of this robbery, the pistol which was held by him was discharged and the officer quit struggling, this was a confession of guilt of the crime of murder, even though in another portion of the statement he said that he had no intention of shooting anyone, for in *Ford* v. *State,* 202 *Ga.* 599 (3) (44 S. E. 2d 263), it is held: "Where the evidence shows, and it is admitted in the defendant's statement, that the homicide occurred by the discharge of a gun held by the accused and used in an attempt to rob the deceased, even if the discharge of the gun was unintentional, the offense is murder; and in no view of such facts does it involve homicide by accident or involuntary manslaughter." See also *Russell* v. *State,* 196 *Ga.* 275 (26 S. E. 2d 528); *Solesbee* v. *State,* 204 *Ga.* 16 (3) (48 S. E. 2d 834). The statement made by the defendant included every act necessary to be proved in order to establish his guilt, and the trial judge did not err in charging the law in reference to confessions of guilt. *McCloud* v. *State,* 166 *Ga.* 436 (2) (143 S. E. 558); *Wright* v. *State,* 186 *Ga.* 863 (1) (199 S. E. 209).

2. While, under Code § 27-207, a lawful arrest without a warrant can be made by an officer only in three instances, (1) if the offense is committed in his presence; or (2) the offender is endeavoring to escape; or (3) if for other cause there is likely to be a failure of justice for want of an officer to issue a warrant—the General Assembly by the enactment of the Uniform Criminal Extradition Act (Ga. L. 1951, p. 726; Code, Ann. Supp., § 44-414), made provision for another instance in which an arrest without a warrant might be lawfully made, it being there provided: "The arrest of a person may be lawfully made also by any peace officer . . . without a warrant upon reasonable information that the accused stands charged in the courts of a State with a crime punishable by death or imprisonment for a term exceeding one year." Under the undisputed evidence in this case, the arresting officers, Mize and Davis, had reasonable information at the time of the arrest of the defendant, as outlined above, that he stood charged in the State of North Carolina with a felony punishable by death or imprisonment for a term exceeding one year. It was, therefore, not error for the trial judge to charge the jury, as complained of in ground 5 of the amended motion for a new trial: "If you believe that officer Mize and officer Davis had reasonable information that this defendant had committed a series of offenses in this State of North Carolina that carried the penalty of death or was a felony that was punishable by not less than one year in the penitentiary, and you believe they acted on that information, then I charge you that they had a right to make the arrest.

In this connection the State alleges and contends that they did have this information and they contend further that the defendant never made any objections to the arrest at all, and that he volunteered to come to Decatur with the officers."

3. It was not error, as contended in ground 6 of the amended motion for a new trial, for the judge to instruct the jury in effect that the evidence with reference to the warrants and charges against the defendant in Mecklenburg County, North Carolina, was not before them for the purpose of showing that the defendant is guilty of the offenses charged there, but that the jury might consider this evidence insofar as it might throw light upon the question as to whether or not he knew he was charged with that crime, and whether or not he believed and had cause to believe, when the officers informed him he was wanted in North Carolina and requested him to accompany them to police headquarters, that the deceased officer Mize was making an arrest.

4. Having held that, under the undisputed evidence in this case, the arrest of the defendant by the officer without a warrant was lawful, the charge complained of in ground 7 of the motion for a new trial, which instructed the jury that, if there is no warrant obtained by an officer, and he makes an arrest, the defendant has a right to resist the illegal arrest with such force as is necessary, even if contradictory and confusing, was not harmful to the defendant, since it gave him the benefit of a defense to which he was not entitled under the law.

5. The offense of voluntary manslaughter as related to mutual combat or mutual intention to fight was not involved under the evidence in this case, and the trial judge did not err in failing to instruct the jury with reference thereto, as complained of in ground 8 of the amended motion for a new trial.

6. The evidence amply authorized the verdict, and the trial judge did not err in denying the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Wyatt, P. J., and Mobley, J., who dissent.*

ARGUED NOVEMBER 8, 1954—DECIDED JANUARY 10, 1955—
REHEARING DENIED FEBRUARY 17, 1955.

*H. O. Hubert, Jr., Thomas O. Davis,* for plaintiff in error.

*Roy Leathers, Solicitor-General, Eugene Cook, Attorney-General, W. Harvey Armistead, Rubye G. Jackson,* contra.

DUCKWORTH, Chief Justice dissenting. If the verdict of guilty had been rendered without errors of law having been committed during the trial preceding that verdict, I would be the first to affirm the conviction. But to me no higher or more solemn duty rests upon this court than that of seeing that executions of persons come only after a conviction of a crime for which that penalty is provided by law, after a trial free from errors of law. The evidence of guilt of a cold-blooded murder is abundant in

this record. But the trial judge erroneously charged on the law of confession, when, as a matter of law, there was no confession in this case. The proven statement of the accused is extremely incriminating and might have contributed materially to the conviction and properly so, yet it is not a confession. It does not admit the material allegations of the indictment which is essential to a confession. It neither admits shooting the deceased, nor that he was killed thereby. Let the State take life when the law so provides, but by all means let it do so in strict accord with the law.