S97A1435, S97X1438. TURPIN v. CHRISTENSON; and vice versa.
(497 SE2d 216)

THOMPSON, Justice.

Scott Lynn Christenson was convicted of murder and armed robbery in 1990, and sentenced to death. This Court affirmed Christenson's convictions in *Christenson v. State,* 261 Ga. 80 (402 SE2d 41) (1991) (*"Christenson I"*), but remanded to the trial court to determine if the State had a good faith basis for some of its cross-examination questions during the sentencing phase and to conduct a *Jackson-Denno* hearing on the admissibility of a custodial statement introduced in the sentencing phase. The United States Supreme Court denied Christenson's petition for certiorari. *Christenson v. Georgia,* 502 U. S. 855 (112 SC 166, 116 LE2d 130) (1991). In *Christenson v. State,* 262 Ga. 638 (423 SE2d 252) (1992) (*"Christenson II"*), this Court affirmed Christenson's death sentence. Christenson's petition

[16] *Allen v. State,* 259 Ga. 63, 67 (1) (c) (377 SE2d 150) (1989).
[17] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

for certiorari was again denied. *Christenson v. Georgia*, 508 U. S. 927 (113 SC 2388, 124 LE2d 291) (1993).

In 1995 Christenson filed this habeas action, raising numerous claims, including ineffective assistance of counsel. The habeas court ruled that many of Christenson's claims were not subject to habeas review because they had been addressed on direct appeal, and that many other claims had been procedurally defaulted. The habeas court, however, vacated Christenson's death sentence because his trial counsel had been ineffective in the preparation for and the conduct of the sentencing phase. The State appeals the habeas court's vacation of the sentence, Case No. S97A1435, and Christenson cross-appeals the habeas court's affirmance of his conviction, Case No. S97X1438. We affirm.

The factual background for Christenson's conviction and sentence is set out in *Christenson I*, supra at (1). Briefly summarized, the evidence adduced at trial showed that the victim, Albert L. Oliver III, was last seen driving his Toyota sports utility vehicle, with Christenson in the passenger's seat, on July 6, 1989. Christenson was arrested for stealing gas in Lonoke, Arkansas, on July 7, 1989. He was alone and driving Oliver's vehicle. There were bloodstains in the vehicle and on some of Christenson's clothes. After Oliver's body was discovered near Columbus, Georgia, Christenson admitted to killing Oliver in four separate statements: a written statement, two audio-taped statements, and a videotaped statement which included Christenson's reenactment of the crime. According to his statements, Christenson hitched a ride with Oliver (with whom he was acquainted), tried to take his vehicle at gunpoint, struggled with Oliver for the weapon, and shot Oliver and dumped his body in a rural area.

## Claims That Are Barred

1. Christenson raised numerous claims of alleged prosecutorial misconduct in his habeas petition regarding both the guilt/innocence and sentencing phases of his trial. He claimed the prosecutor made improper closing arguments, including comments regarding Christenson's lack of remorse, Christenson's failure to testify, prejudicial matters outside the record, the prosecutor's personal and religious beliefs, and the impact of the crime on the victim's family. In addition, Christenson claimed prosecutorial misconduct because the State questioned mitigation witnesses about Christenson's prior offenses without providing Christenson with pretrial notice of the intent to raise these offenses in the penalty phase.

The habeas court correctly ruled that these claims are barred. It is well settled that "[a]fter an appellate review the same issue[ ] will

not be reviewed on habeas corpus." *Elrod v. Ault*, 231 Ga. 750 (204 SE2d 176) (1974). Issues which were raised and decided on direct appeal cannot be reasserted in habeas corpus proceedings. *Gunter v. Hickman*, 256 Ga. 315 (1) (348 SE2d 644) (1986); *Gaither v. Gibby*, 267 Ga. 96 (2) (475 SE2d 603) (1996). This Court has already considered the existence of error in the State's closing arguments on direct appeal and ruled adversely to Christenson. *Christenson I*, supra at (7). In addition, the State's questions in the penalty phase regarding Christenson's prior offenses were previously addressed by this Court and found to be proper. *Christenson II*, supra at (2). We find no error.

2. Christenson alleges that the trial court erred by refusing to charge the jury on voluntary manslaughter. This claim was addressed on direct appeal and this Court held that the evidence did not support a charge on voluntary manslaughter. *Christenson I*, supra at (6). Therefore, this habeas claim is barred. *Gunter*, supra; *Elrod*, supra.

3. Christenson claims that the trial court erred by failing to exclude questions about Christenson's prior offenses and to prevent improper comments by the State during closing argument. These habeas claims were also characterized by Christenson as prosecutorial misconduct in Division 1 and are barred for the same reason: they were litigated on direct appeal. Id.

4. Christenson alleges the trial court erred by denying him funds to retain a psychiatrist. This claim was considered on direct appeal and this Court ruled adversely to Christenson. *Christenson I*, supra at (1) (c). Therefore, this habeas claim is barred. *Gunter*, supra; *Elrod*, supra.

5. This Court previously held that Christenson's custodial statements were voluntary and admissible. *Christenson I*, supra at (3). The State also introduced a custodial statement made by Christenson, after a prior arrest for car theft, as evidence in aggravation. This Court remanded for a *Jackson-Denno* hearing on the admissibility of this statement, *Christenson I*, supra at (9), and later held that the statement was admissible. *Christenson II*, supra at (2). Since the admissibility of these statements was already addressed on direct appeal, a habeas claim on these grounds is barred. *Gunter*, supra; *Elrod*, supra.

6. Christenson's habeas complaints regarding the qualification of prospective jurors were addressed on direct appeal and, accordingly, are barred. *Christenson I*, supra at (4); id.

7. The failure of the trial court to conduct a *Batson* inquiry was addressed on direct appeal. *Christenson I*, supra at (5). Therefore, this claim is barred. *Gunter*, supra; *Elrod*, supra.

8. This Court has previously determined that Christenson's

death sentence was not disproportionate to other death sentences. *Christenson II*, supra at (3).

### Claims That Are Procedurally Defaulted

9. Christenson complains in his habeas corpus petition about several alleged instances of prosecutorial misconduct which were not addressed on direct appeal. Specifically, Christenson claims that the prosecutor should have recused himself due to prior dealings with Christenson, that he improperly commented on several matters outside the evidence, and that he mischaracterized the evidence during cross-examination. Christenson could have raised these issues on direct appeal but he failed to do so. In Georgia, the failure to raise an error timely generally waives a habeas claim unless the petitioner can meet the cause and prejudice test:

> [A] failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus. However, an otherwise valid procedural bar will not preclude a habeas corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal *and* a showing of actual prejudice to the accused.

*Black v. Hardin*, 255 Ga. 239 (4) (336 SE2d 754) (1985); see also OCGA § 9-14-48 (d). The only exception to the cause and prejudice test is the granting of habeas corpus relief to avoid a "miscarriage of justice," which is an extremely high standard that is not met in this case. See *Valenzuela v. Newsome*, 253 Ga. 793 (4) (325 SE2d 370) (1985) ("miscarriage of justice" approaches the situation where the State is imprisoning the wrong person due to mistaken identity).

Christenson's claims of prosecutorial misconduct are thus defaulted unless he can satisfy the cause and prejudice test. To show cause, Christenson must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim that has been procedurally defaulted." *Turpin v. Todd*, 268 Ga. 820, 825 (493 SE2d 900) (1997); *McCleskey v. Zant*, 499 U. S. 467, 493 (111 SC 1454, 113 LE2d 517) (1991). Objective factors which may constitute "cause" include interference by government officials that makes compliance with the procedural rules impossible or a showing that a factual or legal claim was not available to counsel. *Turpin*, supra. Ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), also constitutes "cause," but attorney error that falls short of that standard does not. Id. To show prejudice, Christenson must demonstrate actual prejudice that

"worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 828; *United States v. Frady*, 456 U. S. 152, 170 (102 SC 1584, 71 LE2d 816) (1982).

Christenson cannot show sufficient cause to excuse his procedural default. He presents no evidence that any external factors impeded his counsel's ability to raise any of these claims, and the factual and legal basis of these claims was available to him on direct appeal. Christenson resorts only to alleged ineffectiveness of counsel to support a showing of cause. Although Christenson's trial counsel was deficient in the preparation for and conduct of his trial,[1] Christenson received additional appellate counsel for his direct appeal[2] and he does not point to any errors or omissions by appellate counsel which might constitute ineffective assistance under *Strickland v. Washington*. Instead, he merely asserts that if this Court concludes that prosecutorial misconduct claims were not raised on direct appeal, then we must hold that Christenson's appellate counsel provided ineffective assistance sufficient to constitute cause. This is an incorrect statement of the law. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U. S. 478, 486 (106 SC 2639, 91 LE2d 397) (1986). Since there was no showing that Christenson's appellate counsel was ineffective, Christenson's prosecutorial misconduct claims which were not raised on direct appeal are procedurally defaulted.

10. Christenson also alleges numerous errors by the trial court that include: failing to grant a continuance at the start of the trial, refusing to grant funds to hire a defense investigator, improperly restricting voir dire, failing to require the State to comply with *Brady v. Maryland*, giving an erroneous jury charge, and failing to exclude prejudicial evidence, such as the reenactment videotape and photos of the victim's body. None of these claims were raised on direct appeal and, for the same reasons enumerated in Division 9 of this opinion, Christenson does not show sufficient cause to overcome his procedural default.[3]

11. Christenson asserts in his habeas appeal that the Georgia death penalty statutes, OCGA § 17-10-30 et seq., and the Unified

---

[1] The ineffective assistance of Christenson's *trial* counsel is addressed in Division 12.

[2] Christenson's trial counsel was supplemented on direct appeal by attorneys James A. Messner, Frederick Robinson, Stephen M. McNabb, Michael G. McGovern, Stephen B. Bright, Charlotta Norby and the law firm of Fulbright & Jaworski.

[3] The failure of Christenson's trial counsel to object to the alleged prosecutorial misconduct or trial court errors may constitute support for his separate claim of ineffective assistance of counsel, which is not procedurally defaulted and is addressed in Division 12.

Appeal are unconstitutional. These claims could have been raised in Christenson's direct appeal but they were not. There is no showing of cause so these claims are procedurally defaulted. *Turpin,* supra at 825; *Black,* supra.

## Ineffective Assistance of Counsel

12. Christenson alleges that his trial counsel provided him with ineffective assistance of counsel during the preparation for and conduct of his trial. This claim is neither barred nor defaulted. Georgia law provides that an ineffective assistance of counsel claim need not be raised until such time as trial counsel no longer represents the defendant. *White v. Kelso,* 261 Ga. 32 (401 SE2d 733) (1991). The rationale behind this rule is that counsel cannot reasonably be expected to assert his or her own ineffectiveness. Id. Mr. Richard A. Bunn, one of Christenson's trial attorneys,[4] continued as Christenson's appellate counsel through the exhaustion of Christenson's direct appeals. See *Christenson II,* supra at 639; *Christenson I,* supra at 93. When Mr. Bunn ceased his representation, Christenson's habeas counsel raised the claim of ineffective assistance of counsel, satisfying the rule that this claim must be raised at the first possible post-conviction opportunity. *White,* supra. Ineffective assistance of counsel is therefore not barred or defaulted and remains a viable claim.

A claim of ineffective assistance of counsel is grounded in the general right to counsel guaranteed to criminal defendants by the Sixth Amendment to the United States Constitution and Article I, Section I of the Georgia Constitution. Appellate courts apply a two-pronged test to determine if counsel's performance was ineffective as to require reversal of a conviction or a death sentence:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a break-

---

[4] Christenson's other trial attorney was Mr. William L. Kirby II, who apparently ceased representing Christenson after the trial. References to "trial counsel," "Christenson's counsel," or "defense counsel" include both Mr. Bunn and Mr. Kirby.

down in the adversary process that renders the result unreliable.

*Strickland v. Washington,* supra at 687. The Supreme Court of Georgia adopted the *Strickland* test in *Smith v. Francis,* 253 Ga. 782 (325 SE2d 362) (1985). For Christenson to show that his trial counsel's performance was defective, he must demonstrate that his trial counsel's performance was not reasonably effective in light of the circumstances confronting his counsel before and during the trial. *Smith,* supra at (1). Hindsight is not employed, and Christenson's counsel is afforded a strong presumption that their conduct fell within a wide range of reasonable professional conduct and that their significant decisions were made in the exercise of reasonable professional judgment. Id. In order to show prejudice, Christenson must demonstrate that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Christenson must show both defective representation and prejudice in order to prevail on this claim.

(A) *The Guilt/Innocence Phase*

In July 1989, shortly after Christenson's arrest, the trial court appointed Mr. Richard A. Bunn and Mr. William L. Kirby II to represent the defendant. Trial counsel made a determination that, based on the evidence, there would likely be a conviction and that the crucial phase of the trial would be the penalty phase. Although Mr. Bunn had no experience trying a murder case, let alone a death penalty case, they decided that Mr. Kirby would be primarily responsible for the guilt/innocence phase and Mr. Bunn would be primarily responsible for the penalty phase. The trial took place in March 1990.

Trial counsel had approximately eight months from appointment until trial, but they conducted little preparation and investigation of Christenson's case until the eve of trial. In October 1989, trial counsel filed a number of motions relating to guilt/innocence issues, such as a motion to hire an investigator and a motion to suppress the defendant's statements. The trial court denied Christenson's motion for an investigator in February 1990 and it was only after this denial that Christenson's counsel traveled to Arkansas to interview law enforcement witnesses to Christenson's arrest and initial statements. This investigatory trip took place less than two weeks before trial and *after* the *Jackson-Denno* hearing on the admissibility of Christenson's statements. Although trial counsel filed Christenson's motion to suppress defendant's statements in October 1989, they did nothing to obtain a hearing on this issue until February 1990. At that hearing, Christenson's counsel filed a motion to continue the hearing because they had not "had an opportunity to get to Arkansas" and

interview witnesses in that state. The trial court, unimpressed with this reason, denied the motion for a continuance and conducted the hearing. Then, *at defense counsel's request*, the trial court delayed ruling on the statements' admissibility until the business day before the trial was to begin. At that final pretrial conference, the trial court ruled that the statements were admissible. Christenson's counsel then informed the trial court that they were not prepared to proceed to trial, and the trial court took this to be another motion for continuance, which it denied.

Mr. Kirby tried the guilt/innocence portion of the trial. In his opening statement, Mr. Kirby told the jury that the defense would show that Mr. Oliver, the victim, had been a drug-dealing homosexual who had initiated the events which led to his death by attempting to trade sex for drugs. As the trial progressed, it became apparent that trial counsel had virtually no evidence to support this characterization of the victim. The only "evidence" to support the defense theory that Oliver was a homosexual was some condoms found in his sports utility vehicle, some friends who were teenage males, and the fact that he was unmarried, 31 years old and lived alone.[5] There was absolutely no evidence to support the defense theory of a drug deal gone bad because no drugs or drug residue were found in Oliver's truck or apartment. Mr. Kirby nonetheless persisted with this theme on closing argument by laying out these tenuous "facts" and telling the jury to "come to what conclusions you may." The jury convicted Christenson of malice murder and armed robbery.

Pretermitting the question of defective representation in the guilt/innocence phase, we find the habeas court did not err by ruling that Christenson cannot meet the prejudice prong of *Strickland*. Although Christenson's counsel's preparation for and conduct of the guilt/innocence phase included errors and omissions, the evidence of Christenson's guilt was overwhelming. The jury heard, read and saw Christenson admit to killing Oliver in several separate statements, all later held to be admissible by this Court. *Christenson I*, supra at (3). Christenson was the last person seen with Oliver, and Christenson was arrested the following day driving Oliver's truck in another state. There was blood in the truck and on Christenson's clothes. Christenson cannot show that there was a reasonable probability that, but for trial counsel's errors, he would not have been convicted. See *Strickland*, supra; *Smith*, supra. We therefore affirm the habeas

---

[5] In fact, the jury heard evidence to contradict this theory because one of the people who found Oliver's body was described as Oliver's former girl friend. Also, Christenson's statements introduced at trial did not mention sex or drugs — Christenson had consistently stated that he hitched a ride with Oliver so he could take his vehicle.

court's ruling on Christenson's convictions.[6] Because the evidence introduced in the guilt/innocence phase carries over into the penalty phase, some of trial counsel's deficiencies in the guilt/innocence phase will also be addressed in the penalty phase to the extent they prejudiced Christenson and rendered his sentence unreliable.

(B) *The Penalty Phase*

Defense counsel, as previously mentioned, recognized that the penalty phase would be the crucial phase of the trial, considering the amount of evidence pointing to Christenson's guilt. Mr. Bunn, although he lacked any experience trying a death penalty case, was primarily responsible for assembling and presenting the mitigating evidence. Soon after appointment, trial counsel noticed that Christenson seemed aloof and detached; often they had to rely on his family, especially his father, to get him to communicate with them. Trial counsel filed a motion for psychiatric evaluation because they believed that Christenson needed some "expert help" and because they believed that mental health issues might be relevant at trial. Although trial counsel recognized that mental health might be a mitigating factor in the sentencing phase, Mr. Kirby was primarily involved with investigating and developing the mental health evidence. Trial counsel believed that this evidence would be more relevant to guilt/innocence issues, such as competency to stand trial or a verdict of guilty but mentally ill.

At the hearing on the motion for psychiatric evaluation, trial counsel presented some of Christenson's patient files from when he had been placed in the Bradley Center, a private psychiatric hospital, for in-patient treatment when he was fifteen years old (three years before the murder).[7] Christenson had been ordered to undergo psychiatric treatment due to several property crimes he had committed as a juvenile. Trial counsel also presented the testimony of Christenson's father, who stated that his son had a drug problem and that he suffered from "mood changes." The trial court granted the motion in order to determine Christenson's ability to appreciate the nature of the charges against him and to assist in his defense.

Christenson has an extensive history of psychiatric problems and substance abuse. The Bradley Center files contained a diagnosis

---

[6] Christenson also claims that trial counsel was ineffective in failing to develop evidence to support a claim of voluntary manslaughter. This contention is without merit. The trial evidence and the available information showed that Christenson initiated an armed robbery by pointing a gun at the victim, without provocation, and then killed the victim when he resisted. A voluntary manslaughter charge is not warranted under these circumstances. See *Christenson I*, supra at (6); *Horton v. State*, 249 Ga. 871 (1) (295 SE2d 281) (1982); *Fields v. State*, 211 Ga. 335 (5) (85 SE2d 753) (1955).

[7] Trial counsel testified at the habeas hearing that they were unsure where they obtained these files or who gave them the files.

of dysthymic disorder, alcohol abuse, conduct disorder, and under-socialized, non-aggressive, narcissistic personality disorder with features of sociopathy. The files also contained information on a genetic disposition toward alcohol abuse in the Christenson family and Christenson's own extensive alcohol abuse, depression, anger, frustration, lack of impulse control and "poor reality testing." The Bradley Center Psychological Report noted that Christenson's alcohol abuse sometimes led to blackouts, that Christenson had an underdeveloped "ability to utilize his abstractive and cognitive integrating skills," and that he had very weak "perceptual and organizational processes . . . in terms of adequately discriminating and delineating the external reality." The Bradley Center gave Christenson a poor prognosis for recovery and recommended lengthy treatment, but Christenson's parents reached the limits of their insurance coverage after six weeks and removed Christenson from the Center.

Pursuant to the trial court's order, Christenson was evaluated by a state psychologist, Dr. Karen Bailey-Smith, who determined that Christenson was competent to stand trial and had been legally sane when he committed the crimes. In addition to her competency determination, Dr. Bailey-Smith diagnosed Christenson with a Personality Disorder Not Otherwise Specified and Psychoactive Substance Abuse Not Otherwise Specified. She further noted a dramatic twenty-point decline in Christenson's IQ in the three years since his stay at the Bradley Center, from bright-normal to low-average intelligence, which she attributed to drug usage.

Despite the indications of Christenson's impaired mental condition, trial counsel did no further investigation of his mental health. Trial counsel never obtained the complete Bradley Center files nor did they read the entirety of the file portions that they did have. No one contacted the Bradley Center clinical staff. They also did not contact Dr. Bailey-Smith about her opinion on mitigation issues or consider using her report.[8] Trial counsel did file a motion for funds to hire a private psychiatrist and a second motion for psychiatric evaluation but they did not argue specific findings by the Bradley Center or Dr. Bailey-Smith, other than the decline in IQ. The trial court denied the motions.[9] After this denial, trial counsel did not seek any other means of obtaining expert assistance. They never sought the advice or resources of any criminal defense or capital defense organi-

---

[8] Trial counsel admitted that they did not even look up Dr. Bailey-Smith's diagnosis in the DSM-III.

[9] Mr. Kirby testified that his primary purpose in requesting a psychiatric evaluation was not to determine Christenson's mental health, but as a "ploy" to "confuse the issues" and to ensure that Christenson was examined by a state psychiatrist in the Milledgeville facility. Mr. Kirby stated that these psychiatrists made poor witnesses for the State because they tended to have foreign accents and did not treat their patients very well.

zations in Georgia, although they admitted at the habeas hearing that they were aware of these organizations. They did not contact any mental health professionals for reduced fee or pro bono support, or for referrals. They completely abandoned the mental health issue and did not use it at trial.

At the habeas corpus hearing, Christenson presented the testimony of two mental health experts. A psychiatrist testified that Christenson had an anxiety disorder characterized by a "pervasive sense of nervousness or anxiety [even] in a normal, non-threatening environment." He also stated that Christenson had an obsessive-compulsive disorder and an impulse-control disorder. According to the psychiatrist, Christenson was essentially non-confrontational (none of his prior offenses involved violence) and, due to his mental disorders, he would have been unable to make rational decisions during the struggle and shooting.

A licensed clinical social worker testified that Christenson's family has a history of alcoholism and mental illness. All four of Christenson's grandparents were alcoholics and his mother and paternal grandmother, like Christenson himself, had been institutionalized in mental hospitals. Christenson's mother suffered from depression; when Christenson was nine years old she had locked herself in a car and threatened to shoot herself.[10] In addition, Christenson was largely estranged from and uncommunicative with his parents and their relationship had been strained for years. Although the social worker interviewed Christenson and some of his family members, much of her information regarding Christenson's childhood and troubled family history *came from portions of the Bradley Center files that trial counsel had apparently not reviewed*. Trial counsel instead chose to rely largely on Christenson's father, identified by the Bradley Center files as estranged from his son, for information on Christenson's childhood and family history and for assistance communicating with their client. Not surprisingly, trial counsel testified at the habeas hearing that they were unaware of the extent of Christenson's psychological problems and completely unaware of the prevalence of mental illness and substance abuse in Christenson's family.

In the penalty phase of the trial, the State introduced one witness in aggravation. The witness was Detective Cox of the Columbus Police Department. He testified that while he was transporting Christenson back to Columbus from Jackson, Tennessee, where Christenson had been arrested after stealing a truck in Georgia,

---

[10] According to affidavits and the psychiatrist's testimony, Christenson's mother was extremely overbearing and critical of her children. Most telling is her response to her son's arrest for the murder. She admitted that she "wanted Scott to be executed as soon as possible."

Christenson had told him that "he was going to rob the individual and get the keys [to the truck] and that he would kill [the owner] if he didn't get the keys." This statement did not appear in the report that Detective Cox completed after he returned to Georgia with Christenson. One year later, and one day after Christenson was arrested for Oliver's murder, Detective Cox remembered that Christenson had made this statement. Detective Cox prepared a supplemental report and it was from this supplemental report that he testified about Christenson's statement. Trial counsel, though aware of the discrepancy between the two reports, failed to impeach Detective Cox with the first report that lacked a statement by Christenson. The statement that Christenson had previously intended to kill a truck owner during a vehicle theft was allowed in without challenge.

Trial counsel presented 19 witnesses and 27 exhibits as mitigation evidence in the penalty phase. The witnesses included Christenson's parents, grandfather, aunts, uncles, cousins and Little League baseball coaches. Trial counsel testified that their strategy was to "humanize" their client and prepared these witnesses by asking them to relate stories about "how Scott's childhood was a happy and normal childhood." The witnesses testified, most very briefly, that Christenson had been a good child until his beloved grandmother died when Christenson was 14 years old. Then, Christenson became withdrawn, his grades dropped and he began to get into trouble due to drugs. The mitigation exhibits were mainly baseball trophies and family photographs. A key defense exhibit directly contradicted the family witnesses: Christenson's school records clearly showed that Christenson's grades began to plunge two years before the death of his grandmother.

The mitigation witnesses were poorly prepared for their testimony. Billing records and trial counsel's habeas testimony indicate that trial counsel did not begin contacting most mitigation witnesses until the week before trial. Some mitigation witnesses were not contacted about their expected testimony until they were telephoned by trial counsel the night before they were to testify. As a result, the mitigation witnesses were not adequately prepared for the DA's cross-examination. The DA, in a series of questions testing the witness' knowledge of the defendant's reputation and character, asked the witnesses repeatedly about almost two dozen specific property offenses that Christenson had committed, most from when he was a juvenile. The witnesses were forced to admit they had heard that Christenson had been in some trouble but they did not know about his extensive juvenile and criminal record.[11] The Little League base-

---

[11] Christenson was 18 years old when he was arrested for Oliver's murder. As a result,

ball coaches, in fact, admitted they had had almost no contact with Christenson since he was an adolescent. At the habeas hearing, trial counsel also admitted they were not aware of the extent of Christenson's juvenile record. Even though they knew Christenson had been in trouble with the law as a juvenile, they did not seek to obtain a copy of his juvenile record under the mistaken belief that specific juvenile offenses could not be referred to on cross-examination (trial counsel did no research on this point). See *Burrell v. State*, 258 Ga. 841, 844 (7) (376 SE2d 184) (1989). Some mitigation witnesses were also forced to admit that, based on their direct testimony of Christenson's happy childhood and supportive family, Christenson had been given many opportunities in life but had decided to squander them.

The DA repeatedly hammered home this theme in his closing argument: Christenson, despite being blessed with caring parents and every advantage, had wasted his opportunities and become a career criminal and a drug addict. The prosecutor also argued that the last of Christenson's five shots into Oliver had been the fatal shot,[12] giving Christenson the ability to stop short of killing the victim. Trial counsel did not object although this argument was plainly unsupported by the autopsy report and the medical examiner, who testified there was no accurate way to determine the order of the shots. The DA also argued the defendant's lack of remorse, that he had sat there "fish-eyed" during the trial. The Bradley Center files contained an explanation for Christenson's unresponsive demeanor (due to his mental disorders he would simply withdraw in stressful situations) but the jury of course heard nothing about Christenson's psychological background. Lastly, the DA reminded the jury that Christenson's main trial defense had been a vicious, wholly unsupported attack on the dead victim's character.

Mr. Bunn argued for the defense. He started by telling the jury that he had to renege on a promise made to the jury during Mr. Kirby's opening statement, that the defense would be able to explain why "two sad and aggrieved families" had been brought into the courtroom for this trial. He then proceeded to tell the jury, on three separate occasions, that he had *no* explanation for Christenson's actions:

> We don't know what went wrong with Scott. We don't know what happened to Scott along the way. . . .

---

most of his prior offenses were juvenile offenses. The prior offenses were mostly burglaries and thefts (including auto theft).

[12] Oliver had been shot five times — four wounds were minor wounds to his extremities and the fifth, fatal wound was to his back.

We don't know what happened to Scott after the age of 14. When I look at Scott Christenson, I wonder just like everyone else what happened. I don't know what happened. . . .

I can't tell you how a boy with his potential ended up in this courtroom convicted of murder and armed robbery. When I look at his life, I can't explain it.

Mr. Bunn stated that Christenson had "no excuses" for what he had done. He told the jury "I'm not telling you that Scott deserves mercy" and asked for mercy only for Christenson's family. The jury returned a recommendation of death.

Although trial counsel is afforded tremendous deference over matters of trial strategy, the decision to select a trial strategy must be reasonably supported and within the wide range of professionally competent assistance. See *Devier v. Zant*, 3 F3d 1445, 1453 (11th Cir. 1993); *Strickland*, supra at 690. Trial counsel testified that they chose to "humanize" their client because Christenson's drug usage and "narcissistic" personality would not go over well in Harris County. However, before selecting a strategy, counsel must conduct a reasonable investigation into the defendant's background for mitigation evidence to use at sentencing. See *Jefferson v. Zant*, 263 Ga. 316, 319-320 (431 SE2d 110) (1993); *Baxter v. Thomas*, 45 F3d 1501, 1513 (11th Cir. 1995); *Bush v. Singletary*, 988 F2d 1082, 1091 (11th Cir. 1993) ("After an adequate investigation, counsel may reasonably decide not to present mitigating character evidence at sentencing"). An attorney is not ineffective because he fails to follow every evidentiary lead, but an attorney's strategic decision is not reasonable " 'when the attorney has failed to investigate his options and make a reasonable choice between them.' " *Baxter*, supra, quoting *Horton v. Zant*, 941 F2d 1449, 1462 (11th Cir. 1991). The failure to conduct a reasonable investigation may render counsel's assistance ineffective. *Baxter*, supra at 1514; *Curry v. Zant*, 258 Ga. 527, 530 (371 SE2d 647) (1988) (counsel ineffective for failing to further investigate client's mental health despite indications that client was mentally ill).

Christenson's counsel possessed a wealth of information regarding Christenson's psychiatric problems and drug abuse, which they essentially ignored. This is not a situation where trial counsel was unaware of their client's psychiatric problems before trial. See *Williams v. State*, 258 Ga. 281 (7) (368 SE2d 742) (1988). From the beginning, Christenson's counsel had difficulty communicating with their client because he was aloof and detached. They knew their client had been institutionalized in a mental health facility when he was 15 years old, but they never fully reviewed the Bradley Center

files which they possessed, nor did they attempt to determine if there were more files at the Bradley Center. In fact, they never tried to contact any of the Bradley Center staff. Trial counsel also failed to follow up on Dr. Bailey-Smith's report as mitigation evidence even though the report indicated a personality disorder, a substance abuse problem, and a dramatic decline in IQ. They further admitted that their attempt to obtain a second psychiatric examination was a "ploy" and not a serious attempt to determine Christenson's mental health. They did not understand the mental health material that they did review and took no steps to further their understanding. Although trial counsel acknowledged they believed that the penalty phase would be the crucial phase of the trial, they failed to investigate adequately Christenson's possible defenses to a death sentence. The decision to forego a line of defense, without a substantial investigation, must be reasonable under the circumstances. *Jefferson*, supra at 320. Trial counsel's abandonment of the mental health mitigation issues, after only a cursory investigation of their client's psychological health, was not reasonable under the circumstances. A more complete investigation would have only entailed a more careful reading of the materials already in their possession and a few phone calls.

The decision not to investigate further into Christenson's mental health and background was also not strategic. See *Baxter*, supra (there are many situations where an attorney may make a strategic decision not to pursue a line of investigation). Trial counsel ceased any investigation of Christenson's mental health after the trial court denied their second request for a psychiatric examination. It is apparent from the record that this failure to proceed may have stemmed in part from the division of labor. When Mr. Kirby, who was responsible for the guilt/innocence phase *and* the investigation of Christenson's mental health, was unable to develop Christenson's incompetency or insanity, he stopped his psychological investigation. Mr. Bunn, who was responsible for the penalty phase and mitigation evidence, failed to pick up where Mr. Kirby left off. Both of Christenson's lawyers admitted at the habeas corpus hearing that they were unaware of the extent of Christenson's mental problems, of specific episodes from his childhood, of his estrangement from his parents, and of his family's history of mental illness and substance abuse, although this information was in their possession or readily available. Mr. Bunn further conceded that, had he known of some of this information, he may have put it in front of the jury. Trial counsel was deficient in their investigation of available mitigation evidence. *Baxter*, supra; *Curry*, supra.

In addition, trial counsel's mitigation defense, to "humanize" their client, was inadequately presented and appears to have been cobbled together at the last minute. Trial counsel did not contact

some mitigation witnesses until the trial had already begun. Witnesses were put on the stand who had only limited contact with Christenson in the several years before the crime. Witnesses were unprepared for the State's cross-examination about Christenson's prior offenses and had to admit that they did not know the extent of his criminal record. Witnesses, after having testified (at trial counsel's urging) about how Christenson was a good but troubled kid with a supportive family, were forced on cross-examination to validate the State's theme that Christenson had deliberately squandered his opportunities in order to become a criminal. In addition, a key defense exhibit contradicted the testimony of the family witnesses about when and why Christenson began to have trouble as an adolescent. Mr. Bunn could draw no support in his closing argument from the mitigation evidence that trial counsel had presented; he admitted that the defense had *no* explanation for why Christenson had committed the crimes or why he should be spared, other than to show his family mercy.

Trial counsel committed a number of serious errors that hurt their case for a sentence less than death. First, trial counsel's argument in the guilt/innocence phase that the victim was a drug-dealing homosexual, without any evidence to support this assertion, could only have prejudiced the jury against their client. See *Young v. Zant*, 677 F2d 792, 798 (11th Cir. 1982) (competent counsel would not have gone to trial on an insanity defense without any evidence to support it). Second, Christenson's counsel did not attempt to impeach Detective Cox, the sole witness in aggravation, about his sudden remembrance, after a year had passed, of Christenson's comment to him after an arrest, even though trial counsel had Cox's original report and the report did not indicate any remarks by Christenson. Christenson's alleged comment that he had planned to kill a truck owner during a theft came in unchallenged. Third, defense counsel failed to object to the State's characterization of the order of the shots that killed the victim, even though these comments were unsupported by the trial evidence. The State was thus permitted to argue, without objection, that Christenson had inflicted four non-lethal wounds before deciding to fire the fatal shot. Lastly, in the closing argument, trial counsel specifically declined to ask for mercy for their client and implied that their client did not deserve mercy.

The habeas court determined that trial counsel was deficient in the preparation for and conduct of the sentencing phase due to inadequate investigation of possible mitigation evidence and inadequate presentation of the mitigation case. *Baxter*, supra; *Curry*, supra. It further determined that Christenson was actually prejudiced by his trial counsel's errors. Id. The psychiatric evidence, if properly investigated and presented, could have totally changed the evidentiary pic-

ture. See *Baxter*, supra at 1515; *Stephens v. Kemp*, 846 F2d 642, 653 (11th Cir. 1988) ("prejudice is clear" where attorney failed to investigate adequately client's mental health and present evidence of client's mental problems in sentencing phase); *Zant v. Pitts*, 263 Ga. 529 (436 SE2d 4) (1993) (trial counsel ineffective for failing to present a defense of mental retardation where mental examinations showed that defendant was mildly mentally retarded). Psychiatric evidence may have provided the jury with an explanation for Christenson's actions; trial counsel admitted to the jury that the mitigation evidence which they had presented provided no explanation for the crime. In addition, the jury found only one statutory aggravating factor, that the murder was committed during the course of an armed robbery. There was no torture and the shooting was not execution-style. In fact, the evidence at trial showed that Christenson had not planned to kill the victim during the robbery but had shot the victim during a struggle over the gun.

The evidence supports the habeas court's conclusion that, but for trial counsel's deficient representation, there exists a reasonable probability that the jury would have recommended life imprisonment. See *Strickland*, supra at 695; *Smith*, supra. That conclusion will not be disturbed on appeal. *Williams v. Caldwell*, 229 Ga. 453 (1) (192 SE2d 378) (1972). Therefore, we affirm the habeas court's vacation of the death sentence due to ineffective assistance of counsel.

*Judgments affirmed. All the Justices concur, except Hunstein and Carley, JJ., who dissent to the judgment in Case No. S97A1435.*

CARLEY, Justice, concurring in part and dissenting in part.

I concur in Case No. S97X1438, wherein the majority affirms the denial of habeas relief as to Christenson's convictions for murder and armed robbery. However, I believe that the habeas court erred in vacating Christenson's death sentence for the murder. Therefore, I dissent to the majority's affirmance of the judgment in Case No. S97A1435.

I respectfully submit that both the habeas court's order and the majority's opinion support only the hypothetical proposition that Christenson's trial counsel could have presented a more effective defense to the imposition of the death penalty. However, the issue to be determined is whether the defense which actually was presented was ineffective. In the seminal case on ineffective assistance of trial counsel, the Supreme Court of the United States cautioned that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland v. Washington*, 466 U. S. 668, 689 (III) (A) (104 SC 2052, 80 LE2d 674) (1984). Christenson's defense is not rendered constitutionally ineffective simply because

there is a possibility that it might have been more effective than it actually proved to be. "[T]he proper standard for attorney performance is that of reasonably effective assistance. [Cit.]" *Strickland v. Washington*, supra at 687 (III) (A).

No presumption of ineffectiveness attaches because the jury imposed the death sentence for the murder which Christenson committed. Indeed, there is a strong presumption that Christenson received effective representation. *Strickland v. Washington*, supra at 689 (III) (A); *Lowe v. State*, 267 Ga. 410, 415 (5) (d) (478 SE2d 762) (1996). Christenson's trial counsel is entitled to a presumption of effectiveness, and deference must be given to the tactics he determined to employ. *Strickland v. Washington*, supra at 689 (III) (A); *Lakes v. State*, 266 Ga. 389 (2) (467 SE2d 566) (1996). Christenson has no constitutional right to counsel who would insure the return of a life sentence. He has only the right to " ' "counsel reasonably likely to render and rendering reasonably effective assistance." (Cit.)' [Cit.]" *McGill v. State*, 263 Ga. 81, 82 (2) (428 SE2d 341) (1993). The appropriate test for determining whether Christenson was afforded his constitutional right to reasonably effective counsel

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately. [Cit.]

*Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993). The purpose of the effective assistance of counsel guarantee of the Sixth Amendment "is simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington*, supra at 689 (III) (A).

With the benefit of hindsight, the habeas court and the majority have engaged in what I perceive to be a second-guessing of the trial tactics of Christenson's trial counsel by making judgments as to what should have been done additionally or differently. However, hindsight is wholly irrelevant in judging the effectiveness of trial counsel. *Strickland v. Washington*, supra at 689 (III) (A); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). Employment of hindsight

> usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel. . . . "[I]n retrospect, one may

always identify shortcomings," [cit.] but perfection is not the standard of effective assistance.

*Waters v. Thomas*, 46 F3d 1506, 1514 (II) (A) (3) (11th Cir. 1995). "The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. [Cits.]" *Berry v. State*, 267 Ga. 476, 479 (4) (480 SE2d 32) (1997).

The primary conclusion is that Christenson's trial counsel was constitutionally ineffective for failing to pursue the mental health issue as a possible additional mitigating factor. However, it is clear that trial counsel made the strategic decision that pursuing the mental health issue would be less effective with the local jurors than an attempt at "humanizing" Christenson. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, supra at 691 (III) (A). It is not constitutionally ineffective to fail to pursue an issue which, in the estimation of otherwise reasonable trial counsel, would not be an effective trial strategy.

> Sometimes, a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course. In this case, counsel were longtime local lawyers who knew their community.

*Rogers v. Zant*, 13 F3d 384, 387 (11th Cir. 1994). Certainly, Christenson's trial attorneys were in a better position than either the habeas court or this Court to determine whether the local jurors would be more inclined to accept a strictly "humanizing" mitigation strategy than one which was also based upon expert testimony as to Christenson's voluntary drug use and his "narcissistic" personality. In some communities, voluntary drug use and psychological problems might not be considered as circumstances in mitigation of a murder wherein the victim was shot five times, the body was concealed and the perpetrator then fled the state in the victim's stolen truck. Since trial counsel believed that the local jury would not readily accept a defense based in whole or part upon Christenson's voluntary drug use and his psychological problems, it could be argued that it would have been an act of ineffective legal representation had counsel nevertheless asserted that defense.

> [S]tacking different defenses can undercut with the jury the defense team's credibility, which is essential to a likelihood of success. [Cits.] . . . [G]ood advocacy requires the winnowing out of some arguments in favor of stressing others: multiplicity of arguments or defenses hints at the lack of confidence in any one. [Cit.]

*Rogers v. Zant*, supra at 388. Accordingly, Christenson's death sentence is being reversed for the anomalous reason that his trial counsel failed to pursue a trial tactic which, had they elected to follow it, could be urged in post-conviction proceedings as an example of their ineffectiveness.

The habeas court and the majority purport to find other instances of ineffectiveness on the part of Christenson's trial counsel. I submit that all of these instances evidence the unauthorized second-guessing of trial counsel's tactical decisions and the application of an erroneous presumption that those tactical decisions were ineffective merely because they were unsuccessful. The fundamental error in the habeas court's order which the majority perpetuates is in this failure "to eliminate the distorting effects of hindsight. . . ." *Strickland v. Washington*, supra at 689 (III) (A). The law of this state authorizes the imposition of the death penalty for the crime of murder and there are some murder cases in which that penalty is authorized "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial. . . ." *Rogers v. Zant*, supra at 386. In my opinion, this is one of those cases. Therefore, I respectfully dissent.

I am authorized to state that Justice Hunstein joins in this opinion.

DECIDED MARCH 16, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998.

*J. Gray Conger*, District Attorney, Chattahoochee Circuit, *Thurbert E. Baker*, Attorney General, *Susan V. Boleyn*, Senior Assistant Attorney General, *Paige R. Whitaker*, Assistant Attorney General, for appellant.
*Jimmy D. Berry*, for appellee.